UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 2015-

BEARBONES, INC.,
d/b/a MORNINGSIDE BAKERY,
and AMARAL ENTERPRISES LLC,

    Plaintiffs,

v.

PEERLESS INDEMNITY
INSURANCE COMPANY,

    Defendant.

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

### NATURE OF THE ACTION

This action seeks damages for a variety of business losses incurred by a Pittsfield, MA commercial bakery and its related real estate entity against its commercial insurer arising from an incident on or about February 19, 2013.

On or about that date water, emanating from a pipe, destroyed and disabled the Bearbones, Inc. business premises, its equipment, its operation as well as its overall viability rendering it a total loss. The realty where Bearbones, Inc. operated was similarly destroyed and disabled. As a consequence of this incident Bearbones, Inc.'s bakery operation ceased functioning rendering it unable to service and supply its customers. Thereafter, through no fault of its own, Bearbones, Inc.'s customer base was lost.

PARTIES, JURISDICTION & VENUE

1. Plaintiff Bearbones, Inc. d/b/a Morningside Bakery ("Morningside") is a Massachusetts corporation with a usual place of business at 283 Tyler Street Pittsfield, Berkshire County, Massachusetts 01201.

2. Amaral Enterprises LLC ("AELLC") is a Massachusetts limited liability company with a usual place of business at 9 Pennsylvania Avenue Rensselaer, NY 12144. AELLC owns realty located at 283 Tyler Street Pittsfield, Berkshire County, Massachusetts 01201, a commercial condominium.

3. Defendant Peerless Indemnity Insurance Company ("Peerless") is an Illinois corporation with a usual place of business at 3333 Warrenville Road, Lisle, Illinois 60532.

4. Jurisdiction in the United States District Court for the District of Massachusetts Western Division is proper under 28 U.S.C., §1332(a) in that the parties are citizens of different states. More than $75,000.00 is in controversy.

5. Venue is properly laid in the United States District Court for the District of Massachusetts under 28 U.S.C., §1391(b)(2) in that the events giving rise to the claim and the real property and the business corporation that is the subject of this action are situated in Berkshire County, Commonwealth of Massachusetts on the date of the incident.

FACTS COMMON TO ALL COUNTS

6. On or about September 13, 2012 Peerless renewed Morningside and AELLC's casualty policy with an effective date from October 1, 2012 to October 1, 2013. Peerless assigned the identifier "CBP 8519073" to said policy. The Peerless policy includes coverage for losses sustained

2

to Morningside and AELLC as a result of the incident described in the introductory statement. The incident described in the introductory statement is a covered loss under policy CBP 8519073.

7. On October 1, 2012, Morningside and AELLC purchased a renewal of its commercial insurance policy with Peerless, Policy Number BA 8519073 ("the Peerless policy") covering the time period October 01, 2012 through October 01, 2013 ("the First Party Policy"). By way of example only, the First Party Policy covered the Building, Business Personal Property, Business Income and Extra Expense.

8. On or about February 19, 2013, massive amounts of water emanating from a frozen pipe destroyed the Morningside and AELLC business premises, its equipment, its business operation and its overall viability rendering both a total loss. The Morningside premises are owned by a related entity: Amaral Enterprises LLC.

9. By way of example only Morningside has sustained the following losses:

$30,000.00 to replace damaged equipment

$120,269.00 to replace destroyed equipment

$10,100.00 to replace ruined/destroyed food

$4,170.00 to replace destroyed furniture

$9,630.00 to replace destroyed security system

$8,614.90 in lost contracts for custom wedding cakes (Morningside arranged with other Berkshire County bakeries to ensure customers' weddings would enjoy a custom cake.)

$5,375.00 late payment fees associated with non-payment of invoices due to lack of a business income

$454,200.00 estimated gross annual income lost each year

3

$156,000.00 in advertising costs/expenses to restore goodwill l of Morningside Bakery and attain/achieve magnitude of sales prior to incident

$3,335.00 loss of a delivery van (had to sell for $2,965.00 to avert repossession)

$180,000 lost opportunity costs concerning commercial condominium realty

To be ascertained monetary loss concerning lost business profits, unpaid K1 distributions, unpaid salary, lost business opportunities concerning a sale of Morningside, expansion of Morningside, refinance of Morningside

$37,850.00 lost monthly revenue business interruption until business operation is fully restored to pre-incident conditions

To be ascertained costs for installation of new oven and refitting premises for new equipment

$10,000.00 Demolition and Disposal Cost (estimated)

Demands by commercial lender Lee Bank of Pittsfield, MA

10. Amaral Enterprises LLC ("AELLC") suffered damages as well. By way of example only, AELLC's realty was damaged by water and the effects of water remaining on the premises. The extent of the monetary damage to Morningside and AELLC is approximately $239,961.00 to meet/comply with structural building code. AELLC has lost its ability to receive income/payment from Morningside as Morningside's business operation has been completely interrupted and compromised by the incident and the failure of Peerless to repair or mitigate the damage.

11. AELLC has been unable to pay its commercial loan obligation to Lee Bank of Berkshire County. Lee Bank has made demands and has visited the property in an effort to seize AELLC for a sum less than its actual value, despite the existence of casualty insurance and equity in the realty. Both AELLC and Morningside have signed one or more Forbearance Agreements with Lee Bank to

stave off foreclosure and affiliated Lee Bank suits against guarantors of Morningside and AELLC's commercial loans.

12.     Morningside and AELLC have fully cooperated in every way with Peerless to adjust the loss in an expedited fashion.

13.     Morningside and AELLC promptly notified Peerless of the loss on or about February 19, 2013. A Peerless adjuster sent a Reservation of Rights letter on or about February 25, 2013. The Plaintiffs responded to document requests of Peerless and sent documents the same day to Peerless. On March 28, 2013 the Plaintiffs delivered an email to Peerless' insurance broker Coakley, Pierpan, Dolan & Collin ("Coakley") seeking payment for a remediation vendor and for the business interruption component. There was no response from Peerless' insurance Coakley.

14.     Morningside and AELLC have communicated its losses to Peerless who has never disputed said losses.

15.     Thus far, Peerless has paid Morningside and AELLC only $28,401.09, a sum far less than their true losses, and a sum far less than they are entitled to under the First Party Policy in question.

16.     AELLC and Morningside's counsel communicated a demand dated April 15, 2013 to Gary R. Gregg, an executive of Peerless Indemnity Insurance Company. Peerless ignored said demand.

17.     In the past Lee Bank has threatened to foreclose upon Morningside and has threatened a secured party sale under the Uniform Commercial Code. In the past Morningside executed a forbearance agreement; despite this, the Lee Bank demands did not stop, but in fact, increased.

18.     In the past, Morningside's principal, Brian Amaral, received a telephone call from Mark C. McKenna, a Lee Bank commercial loan executive ("Mr. McKenna"). Said telephone call was initiated well after Morningside retained counsel and the identity of counsel was fully disclosed to Lee Bank. Mr. McKenna sought to take over the Morningside operation and its Pittsfield, Massachusetts real estate for the face value of the loan in question with no payment for its equity, the true value of the business, nor the true value of the real estate, despite the fact that Morningside already executed a forbearance agreement and was compliant upon its terms and conditions. To quote Lee Bank's executive, Mr. McKenna: "We'll take this nightmare off your hands."  Charles J, Gian, a Berkshire County businessman and real estate investor, (Mr. Gian) was prepared to purchase the subject premises at a fire sale price. Mr. Gian is the owner/operator of the business adjacent to Morningside. Mr. Gian as sole Manager of the Morningside Plaza Condominium Association failed to obtain common area casualty insurance.  Realty owned by AELLC is one of the five condominium units at the Morningside Plaza Condominium Association ("MPCA"). Plaintiffs have learned MPCA is non-functioning: on the date of the incident it had no casualty insurance, had no bank account, no books and records, and no separate office, no minutes, no annual meetings, no election of officers, and no annual meetings. In short, it was the alter ego of Charles J. Gian.

19.     Morningside and AELLC contend their loss is covered in full under the Peerless Policy and that Peerless is obligated to indemnify them in full for said loss subject to any deductible or co-pay. Morningside is also entitled to consequential damages, beyond and in addition to compensatory damages, arising from the substantial and unwarranted delay by Peerless in adjusting the claim and its deficient claims handling process.

20. Due to the fact that Peerless has delayed adjustment of the loss in question, Morningside's damages have increased dramatically and Morningside is seeking consequential damages from Peerless due to Peerless' unreasonable delay in consummating adjustment of the loss.

21. Immediately prior to the incident in question Morningside enjoyed a healthy, viable and profitable business with many satisfied, loyal customers. It was voted Berkshire County's "best Bakery" on each year Brian A. Amaral (Morningside's principal) operated Morningside. Its customer base included some of the largest colleges and resorts in Western Massachusetts and many well known business entities. Morningside delivered freshly baked products on a daily basis to these well known institutions Morningside enjoyed and possessed substantial goodwill which has been vitiated by Peerless' utter failure to adjust the loss and mitigate or curtail the extent of the loss.

22. Due to Peerless' foot dragging Morningside is now out of business, with no customers, no income stream, and is unable to pay its bills. Morningside undertook a business decision to purchase casualty insurance with the reasonable expectation that when an insurable loss occurred a team of experienced adjusters would be on the scene immediately to adjust the loss, repair the loss, and make Morningside whole to enable it to carry on its business and stay in business.

23. None of this happened. Peerless, an affiliate of insurance giant Liberty Mutual, simply abandoned its insured and ignored Morningside. The blame lies entirely with Peerless, who is often the subject of bad faith litigation throughout the United States of America by its insureds. Various court rulings support Morningside's contention that Peerless is a commercial insurance carrier who forces its insureds to sue in various courts throughout the country in order to obtain the

benefit of bargained for First Party coverage. Peerless forces its insureds to initiate lawsuits to achieve compensation. By way of example only, a Peerless insured obtained a multi million dollar bad faith jury verdict in a California Superior Court against Peerless.

24. Morningside, AELLC and Peerless have already commenced reference proceedings. By way of example only, AELLC and Morningside have selected William Mullen of McLarens, Inc. Plymouth, MA while Peerless has selected Samuel A. Segal, Esq. of Breakstone White & Glick, P.C. Boston, MA. A third referee is to be chosen by Mr. Mullen and Atty. Segal.

THE PLAINTIFFS' CLAIMS

COUNT I - DECLARATORY JUDGMENT (MORNINGSIDE) (AELLC)

25. Morningside repeats and realleges the allegations contained in ¶ 1 through and including ¶ 24 as though fully set forth herein.

26. An actual controversy exists between Morningside/AELLC and Peerless regarding Peerless' obligation to pay for Morningside/AELLC's described *supra* and the introductory statement in accordance with the First Party Policy. Morningside commences this action pursuant to Fed. R. Civ. P. 57 to obtain a declaration of their rights with respect to coverage of that loss.

27. Morningside/AELLC is entitled to a declaration that its loss is covered in full under the Peerless Policy and that Peerless is obligated to indemnify it in full for that loss subject to any deductible or co-pay. Morningside/AELLC are also entitled to a declaration that they are entitled to consequential damages, beyond and in addition to compensatory damages, arising from the substantial and unwarranted delay by Peerless in adjusting the claim and its deficient claims handling process.

28. Due to the fact that Peerless has delayed adjustment of the loss in question, Morningside/AELLC's damages have increased dramatically and Morningside/AELLC is seeking damages from Peerless due to the unreasonable delay in consummating the adjustment of the loss. On February 1, 2013, Morningside had a healthy, viable and profitable business with many satisfied and loyal customers. Its customer base included some of the largest colleges in Western Massachusetts and many well known business entities. Morningside delivered freshly baked bread products on a daily basis to these well known institutions.

29. Due to Peerless' foot dragging Morningside is now out of business, with no customers and no income stream, and is unable to pay its bills. Morningside undertook a business decision to purchase casualty insurance with the reasonable expectation that when an insured loss occurred a team of experienced adjusters would be on the scene immediately to adjust the loss and make it whole. None of this happened. Peerless, a unit of Liberty Mutual, simply abandoned its insured and ignored Morningside. The blame lies with Peerless, who is the subject of frequent bad faith litigation throughout the United States of America. A review of the dockets throughout the country support Morningside's contention that Peerless is an unscrupulous insurance carrier who forces its insureds, many small businesses, to sue Peerless in order to obtain the benefits of First Party coverage.

## COUNT II - BREACH OF CONTRACT OF INSURANCE (MORNINGSIDE) (AELLC)

30. Morningside repeats and realleges the allegations contained in ¶ 1 through and including ¶29 as though fully set forth herein.

31. Peerless has breached its obligations under the Peerless Policy by failing to pay for Morningside's loss covered by that Policy.

32. As a direct and proximate result of Peerless' breach of the Peerless Policy, Morningside has sustained damages in excess of $1,000,000.00 as set forth in a certain economic damage report dated November 7, 2014 of Teal, Becker & Chiarmonte, CPAs, P.C. The report excludes any additional losses that may be incurred through the date of ultimate resolution. Some of these losses include the impact a foreclosure may have on the principal of the Plaintiffs and Guarantors of the Lee Bank loan and operating expenses of approximately $1,500.00 per month for each month post-incident.

COUNT III - UNFAIR CLAIMS SETTLEMENT PRACTICES, (G.L.c.93A/c.176D,§3(9)) (MORNINGSIDE)(AELLC)

33. Morningside repeats and realleges the allegations contained in ¶ 1 through and including ¶32 as though fully set forth herein.

34. Peerless has violated G. L c. 176D, §3(9) the "Massachusetts Unfair Methods of Competition And Unfair And Deceptive Acts And Practices In The Business Of Insurance" by:

   (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

   (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(j) Making claims payments to insured or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(m) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; or

(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

35. Morningside and AELLC have been damaged as a result of the G. L. c. 93A conduct of Peerless.

36. On May 12, 2014, the United States District Court for the District of Massachusetts decided *Santos v. Preferred Mutual* 2014 WL 1921246 (D. Mass. 2014). Morningside contends *Santos* is persuasive authority for the claims against Peerless herein. Furthermore, *Santos* holds that under certain circumstances reference under G. L c. 175 §99 can be waived, and, more importantly, reference does not and cannot adjudicate 93A claims — and such claims may proceed regardless of the amount of the loss. *Id* at *6.

*Verification*

I, Brian A. Amaral, President of President of Bearbones, Inc. and Member of Amaral Enterprises LLC being duly sworn hereby state that this Verified Complaint has been read and explained to me and that the facts asserted are upon my own knowledge, information and belief and insofar as said facts are upon information and belief, I believe said information to be true.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 5 DAY OF FEBRUARY 2015.

_____
Brian A. Amaral, President
Brian A. Amaral, Member

## PRAYERS FOR RELIEF

I. A judgment in favor of Bearbones, Inc. and Amaral Enterprises LLC against Peerless Indemnity Insurance Company on Count I;

II. A judgment in favor of Bearbones, Inc. and Amaral Enterprises LLC and against Peerless Indemnity Insurance Company on Count II;

III. A judgment in favor of Bearbones, Inc. and Amaral Enterprises LLC against Peerless Indemnity Insurance Company on Count III;

IV. A trial by jury on all issues so triable;

IV. An award under G. L c. 93A to be doubled or trebled in favor of each plaintiff;

V. An award of reasonable attorney fees in favor of each plaintiff;

VI. An award of prejudgment interest in favor of each plaintiff;

VII. The Plaintiffs further request that with respect to Count I that the Court grant Plaintiffs a declaratory judgment pursuant to Fed. R. Civ. P. 57 and G L c. 231A, §1 *et seq.*, declaring that:

A. Peerless must provide coverage for all reasonable costs incurred by Plaintiffs, including attorney fees, consultant fees, expert fees, costs for responding to the incident, rehabilitation costs, removing all contamination, completing all regulatory filings and satisfying all regulatory requirements;

B. to obtain coverage from Peerless for attorneys', consultants' and expert fees it is sufficient that the bills of Plaintiffs' attorneys, experts and consultants submitted to Peerless be in a form consistent with the normal billing practices of such attorneys and consultants as is acceptable to Plaintiffs.

Respectfully submitted,
Bearbones, Inc.,
Amaral Enterprises LLC,
Plaintiffs,
By their attorney,

Richard W. Gannett, Esquire
Massachusetts Bar #184430
rwgannett@gannettlaw.com
Gannett & Associates
165 Friend Street, Suite 200
Boston, MA 02114-2025
(617) 367-0606

Dated: February 6, 2015