UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 2015-30017-KAR

_____

)
BEARBONES, INC.,                                   )
d/b/a MORNINGSIDE BAKERY,              )
and AMARAL ENTERPRISES LLC,         )
                                                                )
      Plaintiffs,                                          )
                                                                )
                                                                )         **VERIFIED SUPPLEMENTAL**
                                                                )         **COMPLAINT**
                                                                )
v.                                                              )         **JURY TRIAL DEMANDED**
                                                                )
PEERLESS INDEMNITY                           )
INSURANCE COMPANY,                         )
                                                                )
      Defendant.                                          )
_____)

## NATURE OF THE ACTION

This action seeks damages for a variety of business losses incurred by a Pittsfield, MA

commercial bakery and its related real estate entity against its commercial insurer arising from an

incident on or about February 19, 2013.

On or about that date water, emanating from a pipe, destroyed and disabled the Bearbones,

Inc. business premises, its equipment, its operation as well as its overall viability rendering it a total

loss. The realty where Bearbones, Inc. operated was similarly destroyed and disabled. As a

consequence of this incident Bearbones, Inc.'s bakery operation ceased functioning rendering it

unable to service and supply its customers. Thereafter, through no fault of its own, Bearbones, Inc.'s

customer base was lost.

## PARTIES, JURISDICTION & VENUE

1.      Plaintiff  Bearbones, Inc. d/b/a Morningside Bakery  ("Morningside") is a Massachusetts corporation with a usual place of business at 283 Tyler Street Pittsfield, Berkshire County, Massachusetts 01201.

2.      Amaral Enterprises LLC ("AELLC") is or was a  Massachusetts limited liability company with a usual place of business at 9 Pennsylvania Avenue Rensselaer, NY 12144.  AELLC owns realty located at 283 Tyler Street Pittsfield, Berkshire County, Massachusetts 01201, a commercial condominium.  Morningside and AELLC are referred herein as the insured.

3.      Defendant Peerless Indemnity Insurance Company ("Peerless") is an Illinois corporation with a usual place of business at 3333 Warrenville Road, Lisle, Illinois 60532.

4.      Jurisdiction in the United States District Court for the District of Massachusetts Western Division  is proper under 28 U.S.C., §1332(a) in that the parties are citizens of different states. More than $75,000.00 is in controversy.

5.      Venue is properly laid in the United States District Court for the District of Massachusetts under 28 U.S.C., §1391(b)(2) in that the events giving rise to the claim and the real property and the business corporation that is the subject of this action are situated in Berkshire County, Commonwealth of Massachusetts on the date of the incident.

## FACTS COMMON TO ALL COUNTS

6.      On or about September 13, 2012 Peerless renewed Morningside and  AELLC's casualty policy with an effective date from October 1, 2012 to October 1, 2013.  Peerless assigned the identifier "CBP 8519073" to said policy.  The Peerless policy includes coverage for losses sustained

to Morningside and AELLC  as a result of the incident described in the introductory statement.  The incident described in the introductory statement is a covered loss under policy CBP 8519073.

7.      On October 1, 2012, Morningside and AELLC purchased a renewal of its commercial insurance policy with Peerless,  Policy Number BA 8519073 ("the Peerless policy") covering the time period October 01, 2012 through October 01, 2013  ("the First Party Policy"). By way of example only, the First Party Policy covered the Building, Business Personal Property, Business Income and Extra Expense.

8.      On or about February 19, 2013, massive amounts of  water emanating from a frozen pipe destroyed the Morningside  and AELLC business premises, its equipment, its business operation and its overall viability rendering both a total loss. The Morningside premises are owned by a related entity: Amaral Enterprises LLC.

9.      By way of example only Morningside has sustained the following losses:

$300,000.00  to replace damaged equipment

$120,269.00 to replace destroyed equipment

$10,100.00 to replace ruined/destroyed food

$4,170.00 to replace destroyed furniture

$9,630.00 to replace destroyed security system

$8,614.90 in lost contracts for custom wedding cakes (Morningside arranged with other Berkshire County bakeries to ensure customers' weddings would enjoy a custom cake.)

$5,375.00 late payment fees associated with non-payment of invoices due to lack of a business income

$454,200.00 estimated gross annual income lost each year

$156,000.00 in advertising costs/expenses to restore goodwill l of Morningside Bakery and attain/achieve magnitude of sales prior to incident

$3,335.00 loss of a delivery van (had to sell for $2,965.00 to avert repossession)

$180,000 lost opportunity costs concerning commercial condominium realty

To be ascertained monetary loss concerning lost business profits, unpaid K1 distributions, unpaid salary, lost business opportunities concerning a sale of Morningside, expansion of Morningside, refinance of Morningside

$37,850.00 lost monthly revenue business interruption until business operation  is fully restored to pre-incident conditions

To be ascertained costs for installation of new oven and refitting premises for new equipment

$10,000.00 Demolition and Disposal Cost (estimated)

Demands by commercial lender Lee Bank of Pittsfield, MA

10.     Amaral Enterprises LLC ("AELLC") suffered damages as well.  By way of example only, AELLC's realty was damaged by water and the effects of water remaining on the premises. The extent of the monetary damage to Morningside and AELLC is approximately $239,961.00 to meet/comply with structural building code. AELLC has lost its ability to receive income/payment from Morningside as Morningside's business operation has been completely interrupted and compromised by the incident and the failure of Peerless to repair or mitigate the damage.

11.     AELLC has been unable to pay its commercial loan obligation to Lee Bank of Berkshire County.  Lee Bank  has  made demands and has visited the property in an effort to seize AELLC for a sum less than its actual value, despite the existence of casualty insurance and equity in the realty. Both AELLC and Morningside have signed one or more Forbearance Agreements with Lee Bank to

4

stave off foreclosure and affiliated Lee Bank suits against guarantors of Morningside and AELLC's commercial loans.

12.     Morningside and AELLC  have fully cooperated in every way with Peerless to adjust the loss in an expedited fashion.

13.     Morningside and AELLC promptly notified Peerless of the loss on or about February 19, 2013.  The first written communication from a Peerless adjuster was received on April 19, 2013, approximately 60 days after Morningside and AELLC reported the loss in question.

14.     Morningside and AELLC  have communicated its losses to Peerless who has never disputed said losses.

15.     Thus far, Peerless has paid Morningside and AELLC only $28,401.09, a sum far less than their true losses, and a sum far less than they are entitled to under the First Party Policy in question.

16.     AELLC and Morningside's counsel communicated a  demand dated April 15, 2013 to Gary R. Gregg, an executive of Peerless Indemnity Insurance Company. Peerless ignored said demand.

17.     In the past Lee Bank has threatened to foreclose upon Morningside and has threatened a secured party sale under the Uniform Commercial Code.   In the past Morningside executed a forbearance agreement; despite this, the Lee Bank demands did not stop,  but in fact, increased.

18.     In the past, Morningside's principal, Brian Amaral, received a telephone call from Mark  C. McKenna, a Lee Bank commercial loan executive ("Mr. McKenna"). Said telephone call was initiated well after Morningside retained counsel and the identity of counsel was fully disclosed to Lee Bank. Mr. McKenna sought to take over the Morningside operation and its Pittsfield, Massachusetts real estate for the face value of the loan in question with no payment for its equity,  the true value of the

business, nor the true value of the real estate, despite the fact that Morningside already executed a forbearance agreement and was compliant upon its terms and conditions. To quote Lee Bank's executive, Mr. McKenna: "We'll take this nightmare off your hands."   Charles J, Gian, a Berkshire County businessman and real estate investor, (Mr. Gian) was prepared to purchase the subject premises at a fire sale price. Mr. Gian is the owner/operator of the business adjacent to Morningside. Mr. Gian as sole Manager of the Morningside Plaza Condominium Association failed to obtain common area casualty insurance.  Realty owned by AELLC is one of the five condominium units at the Morningside Plaza Condominium Association ("MPCA"). Plaintiffs have learned MPCA is non-functioning: on the date of the incident it had no casualty insurance, had no bank account, no books and records, and no separate office, no minutes, no annual meetings, no election of officers, and no annual meetings. In short, it was the alter ego of Charles J. Gian.

19.    Morningside and AELLC contend their loss is covered in full under the Peerless Policy and that Peerless is obligated to indemnify them in full for said loss subject to any deductible or co-pay. Morningside is also entitled to consequential damages, beyond and in addition to compensatory damages,  arising from the substantial and unwarranted delay by Peerless in adjusting the claim and its deficient claims handling process.

20.    Due to the fact that Peerless has delayed adjustment of the loss in question,
 Morningside's damages have increased dramatically and Morningside is seeking consequential damages from Peerless due to Peerless' unreasonable delay in consummating adjustment of the loss.

21.     Immediately prior to the incident in question Morningside enjoyed a healthy, viable and profitable business with many satisfied, loyal customers.  It was voted Berkshire County's "best Bakery" on each year Brian A. Amaral (Morningside's  principal) operated Morningside.   Its customer base included some of the largest colleges and resorts in Western Massachusetts and many well known business entities.  Morningside delivered freshly baked products on a daily basis to these well known institutions Morningside enjoyed and possessed substantial goodwill which has been vitiated by Peerless' utter failure to adjust the loss and mitigate or curtail the extent of the loss.

22.     Due to Peerless' foot dragging Morningside is now out of business, with no customers, no income stream, and is unable to pay its bills.  Morningside undertook a business decision to purchase casualty insurance with the reasonable expectation that when an insurable loss occurred a team of experienced adjusters would be on the scene immediately to adjust the loss, repair the loss, and make Morningside whole to enable it to carry on its business and stay in business.

23.     None of this happened.  Peerless, an affiliate of insurance giant Liberty Mutual, simply abandoned its insured and ignored Morningside.  The blame lies entirely with Peerless, who is often the subject of  bad faith litigation throughout the United States of America by its insureds. Various court rulings support Morningside's contention that Peerless is a commercial insurance carrier who forces its insureds to sue in various courts throughout the country in order to obtain the benefit of bargained for First Party coverage. Peerless forces its insureds to initiate lawsuits to achieve compensation.  By way of example only, a Peerless insured obtained a multi million dollar bad faith jury verdict in a California Superior Court against Peerless.

24.     Morningside, AELLC and Peerless  have already commenced reference proceedings.  By way of example only, AELLC  and Morningside have selected William Mullen of McLarens, Inc. Plymouth, MA while Peerless has selected Samuel A. Segal, Esq.  of Breakstone White & Glick, P.C. Boston, MA. A third referee is to be chosen  by Mr. Mullen and Atty. Segal.

THE PLAINTIFFS'CLAIMS

COUNT  I - DECLARATORY JUDGMENT (MORNINGSIDE) (AELLC)

25.     Morningside repeats and realleges the allegations contained in ¶ 1 through and including ¶ 24 as though fully set forth herein.

26.     An actual controversy exists between Morningside/AELLC  and Peerless regarding Peerless' obligation to pay for Morningside/AELLC's described *supra* and the introductory statement in accordance with the First Party Policy.  Morningside commences this action pursuant to Fed. R. Civ. P. 57  to obtain a declaration of their rights with respect to coverage of that loss.

27.     Morningside/AELLC  is entitled to a declaration that its loss is covered in full under the Peerless Policy and that Peerless is obligated to indemnify it in full for that loss subject to any deductible or co-pay. Morningside/AELLC are also entitled to a declaration that they are entitled to consequential damages, beyond and in addition to compensatory damages,  arising from the substantial and unwarranted delay by Peerless in adjusting the claim and its deficient claims handling process.

28.     Due to the fact that Peerless has delayed adjustment of the loss in question,  Morningside/AELLC's damages have increased dramatically and Morningside/AELLC is seeking damages from Peerless due to the unreasonable delay in consummating the adjustment of the loss. On February 1, 2013, Morningside had a healthy, viable and profitable business with many

satisfied and loyal customers.  Its customer base included some of the largest colleges in Western

Massachusetts and many well known business entities.  Morningside delivered freshly baked bread

products on a daily basis to these well known institutions.

29.     Due to Peerless' foot dragging Morningside is now out of business, with no customers

and  no income stream, and is unable to pay its bills.  Morningside undertook a business decision

to purchase casualty insurance with the reasonable expectation that when an insured loss occurred

a team of experienced adjusters would be on the scene immediately to adjust the loss and

make it whole. None of this happened.  Peerless, a unit of Liberty Mutual, simply abandoned its

insured and ignored Morningside.  The blame lies with Peerless, who is the subject of frequent bad

faith litigation throughout the United States of America.  A review of the dockets throughout the

country support Morningside's contention that Peerless is an unscrupulous insurance carrier who

forces its insureds, many small businesses, to sue Peerless in order to obtain the benefits of First

Party coverage.

COUNT II - BREACH OF CONTRACT OF INSURANCE (MORNINGSIDE) (AELLC)

30.     Morningside repeats and realleges the allegations contained in ¶ 1 through and including

¶29 as though fully set forth herein.

31.     Peerless has breached its obligations under the Peerless Policy by failing to pay for

 Morningside's loss covered by that Policy.

32.     As a direct and proximate result of Peerless' breach of the Peerless Policy, Morningside

 has sustained damages in excess of $1,000,000.00 as set forth in a certain economic damage report

dated November 7, 2014 of Teal, Becker & Chiarmonte, CPAs, P.C. The report excludes any

additional losses that may be incurred through the date of ultimate resolution.  Some of these losses

include the impact a foreclosure may have on the principal of the Plaintiffs and Guarantors of the

Lee Bank loan.

COUNT III - UNFAIR CLAIMS SETTLEMENT PRACTICES,  (G.L.c.93A/c.176D,§3(9))
(MORNINGSIDE)(AELLC)

33.     Morningside repeats and realleges the allegations contained in ¶ 1 through and including

¶32 as though fully set forth herein.

34.     Peerless has violated G. L c. 176D, §3(9)  the "Massachusetts Unfair Methods of

Competition And Unfair And Deceptive Acts And Practices In The Business Of Insurance" by:

> (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at
> issue;
>
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect
> to claims arising under insurance policies;
>
> (c)Failing to adopt and implement reasonable standards for the prompt investigation of
> claims arising under insurance policies;
>
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all
> available information;
>
> (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss
> statements have been completed;
>
> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability
> has become reasonably clear;
>
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance
> policy by offering substantially less than the amounts ultimately recovered in actions
> brought by such insureds;
>
> (h) Attempting to settle a claim for less than the amount to which a reasonable man would
> have believed he was entitled by reference to written or printed advertising material
> accompanying or made part of an application;
>
> (j) Making claims payments to insured or beneficiaries not accompanied by a statement
> setting forth the coverage under which payments are being made;

(m) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; or

(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

35.    Morningside and AELLC have been damaged as a result of the G. L. c. 93A conduct of

Peerless.

36.    On May 12, 2014, the United States District Court for the District of Massachusetts decided

*Santos v. Preferred Mutual* 2014 WL 1921246 (D. Mass. 2014). Morningside contends *Santos* is

persuasive authority for the claims against Peerless herein. Furthermore, *Santos* holds that under

certain circumstances reference under G. L c. 175 §99 can be waived, and, more importantly,

reference does not and cannot adjudicate 93A claims  — and such claims may proceed regardless

of the amount of the loss. *Id* at *6.

COUNT IV - UNFAIR CLAIMS SETTLEMENT PRACTICES,  (G.L.c.93A/c.176D,§3(9))
(MORNINGSIDE)(AELLC)

37.    Morningside repeats and realleges the allegations contained in ¶ 1 through and including

¶36 as though fully set forth herein.

38.    During 2015 the parties submitted their claims to Reference under G. L c. 175 §99.

39.    Morningside and AELLC were the subject of unfair business and claims and settlement

practices during Reference in that Peerless called persons who claimed they were experts but

neither were independent nor objective.

40.     Peerless called a Liberty Mutual  employee, Mary A. Mull, who is neither objective nor

independent as she has worked for Liberty Mutual or Peerless or an affiliate for 29 years, her entire

professional career.

41.     CPA Mull claimed an oath she signs ensures she is both objective and independent. She did

 not produce the oath. CPA Mull could not recall even one court where she was qualified as an

"expert."  She had no reasonable response to cross-examination questions which challenged her

objectivity and independence when her livelihood, paycheck and pension are dependent upon

testifying in the way Liberty Mutual tells her to.

42.     Producing a Liberty Mutual employee and claiming she is an expert is an unfair business

and claims and settlement practice.

COUNT V - UNFAIR CLAIMS SETTLEMENT PRACTICES,  (G.L.c.93A/c.176D,§3(9))
(MORNINGSIDE)(AELLC)


43.     Morningside repeats and realleges the allegations contained in ¶ 1 through and including

 ¶42 as though fully set forth herein.

44..     Peerless called an individual, Bruno Graizzaro, (CPA Graizzaro) who is neither objective

 nor independent as he is the business partner of William O. Monahan (Atty. Monahan) for sixteen

years. Atty. Monahan is the principal Peerless attorney in this lawsuit, in the Superior Court,  and

at Reference.

45.     Atty. Monahan and CPA Graizzaro are active co-partners in a real estate business in

Plymouth County Massachusetts.

46.     This co-partnership was suppressed from the Referees.

47.     This co-partnership was suppressed from the insured.

48.     At the Reference hearing Peerless was unmasked as facilitating, encouraging, funding

testimony of so-called experts who are neither objective nor independent but are controlled by

Peerless.  Peerless is engaging in fraud and deceit. Licensed professionals are complicit in the

aforementioned  fraud and deceit.    A true and correct copy of the final day of Reference is

attached together with documents illustrating the business partnership. Ex. _____.

COUNT VI - UNFAIR CLAIMS SETTLEMENT PRACTICES,  (G.L.c.93A/c.176D,§3(9))
(MORNINGSIDE)(AELLC)

 49.     Morningside repeats and realleges the allegations contained in ¶ 1 through and including

¶48 as though fully set forth herein.

50.     During 2015 the insured delivered a 93A demand letter to Peerless.  Ex. ___.

51.     Peerless refused to resolve the claim, as it was required to do, despite being advised that its

counsel was impermissibly in business with its so-called expert giving the appearance Liberty

Mutual purchases favorable testimony it desires.

52.     In fact, Peerless continues in its misguided course of conduct against its insured through

and including March 2016.  It is engaging in various acts of trickery and deceit against its insured

contrary to Massachusetts law.  By way of example only, it has been harassing the insured with

requests for false stipulations to be entered into ECF which could result in the insured waiving its

claims. In the recent past Peerless has delivered  untrue demand letters claiming Peerless has never

received written discovery from the insured, when, in fact, Peerless has possession of all of the

insured's written discovery, including giant binders of written discovery produced to the state court

parties, the financial expert report of Albany, NY CPA firm, cross-examined the insured at

Reference for hours, and cross-examined the insured's witnesses.

53.     Such below the belt conduct warrants 93A damages against Peerless, a unit of a

Fortune 70 world wide business empire, and a rebuke to the professionals who orchestrate such

conduct.

COUNT VII - REFERENCE STATUTE IS UNCONSTITUTIONAL) (DECLARATORY
JUDGMENT UNDER FED. R. CIV. P. 57 (MORNINGSIDE)(AELLC)

54.     Morningside repeats and realleges the allegations contained in ¶ 1 through and including

¶53 as though fully set forth herein.

55.     G. L c. 175, §99, Twelfth, as currently applied, is unconstitutional as it violates Article 11

of the Massachusetts Declaration of Rights. The aforementioned statute obligates the insured to

purchase justice, an act clearly prohibited by Article 11 of the Declaration of Rights which

guarantees each person the right "to obtain right and justice freely, and without being obliged to

purchase it; completely, and without any denial; promptly, and without delay; conformably to the

laws."

56.     Given Article 11, there exists free access to the courts  ---- Article 11 requires disputes be

decided by a judge, and that all persons seeking to sue in Massachusetts Courts are not required to

"purchase" justice.  The highest Court in the Commonwealth of Massachusetts agrees with the

insured.  *See Bower v. Bournay-Bower*, 469 Mass. 690 , 703 n.12 (2014). Twenty two years the

intermediate appellate court in the Commonwealth of Massachusetts *Graizzaro v. Graizzaro*, 36

Mass. App. Ct. 911 , 912 (1994).

14

57.     As currently applied said statute must be stricken, or abolished, as it serves as an

impediment to persons and business of limited means to access justice and to seek redress for first

party claims such as the one at issue herein.

COUNT VIII - CLASS ACTION UNDER FED. R.  CIV. P. 23 CONCERNING REFERENCE
(MORNINGSIDE)(AELLC)

58.     Morningside repeats and realleges the allegations contained in ¶ 1 through and including

¶57 as though fully set forth herein.

59.     The insured proposes the following sub-classes:

A.      Those insureds, anywhere in the world, who submitted their claim to Reference, or a
        similar such proceeding, in any jurisdiction throughout the world, and were awarded higher
        payment by Referees, or a similar judge like body, than Peerless, or another unit of Liberty
        Mutual, paid such insureds voluntarily prior to the commencement of any Reference, or a
        similar such proceeding;

B.      Those insureds anywhere in the world who were forced to go to Reference, or a similar
        such proceeding, to the extent Reference (or a similar statute) is found or held to be
        unconstitutional as currently applied ;

C.      Those insureds anywhere in the world whose claims or losses were valued by CPA
        Graizzaro and where he failed to disclose his business partnership with Atty. Monahan.

60.     The insured believes that the claimants are numerous and joinder impracticable.

61.     The disposition of the Class members' claims in a class action will provide
substantial benefits to the parties and this Honorable Court.

62.     The prosecution of separate actions by individual Class members would create a
risk of inconsistent and varying adjudications.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as individual members of the Class lack the ability to prosecute individual actions (due to the complexity of the issues) and relative modest sums of money involved relative to the legal services required to obtain said sums and also lack of funds to challenge Liberty Mutual, a sophisticated well financed Fortune 70 worldwide business. Moreover, a class action is necessary because Liberty Mutual and its allies are funding the defense of this lawsuit with monies which should be delivered to their insureds and constitutes an ill-gotten gain.

*Verification*

I, Brian A. Amaral, President of President of Bearbones, Inc. and Member of Amaral Enterprises LLC being duly sworn hereby state that this Verified Supplemental Complaint has been read and explained to me and that the facts asserted are upon my own knowledge, information and belief and insofar as said facts are upon information and belief, I believe said information to be true.

SIGNED UNDER THE PENALTIES OF PERJURY THIS \_11\_ DAY OF MARCH 2016.

Brian A. Amaral, President
Brian A. Amaral, Member


PRAYERS FOR RELIEF

I.      A judgment in favor of Bearbones, Inc. and Amaral Enterprises LLC against Peerless Indemnity Insurance Company on Count I, II, III, IV, V, VI, VII, VIII;

II.     Formation of a Class under Fed. R. Civ. P. 23 (with subclasses) as set forth herein and the appointment of the insured as  class representative and undersigned counsel as class counsel;

III.    A trial by jury on all issues so triable;

IV.     An award under G. L c. 93A to be doubled or trebled in favor of each plaintiff;

V.      An award of reasonable attorney fees in favor of each plaintiff;

VI.     An award of prejudgment interest  in favor of each plaintiff;

VII.    The Plaintiffs further request that with respect to Count I that the Court grant Plaintiffs a declaratory judgment pursuant to Fed. R. Civ. P. 57 and G L c. 231A, §1 et seq., declaring that:

A. Peerless must provide coverage for all reasonable costs incurred by Plaintiffs, including attorney fees, consultant fees, expert fees, costs for responding to the incident, rehabilitation costs, removing all contamination, completing all regulatory filings and satisfying all regulatory requirements;

B.  to obtain coverage from Peerless for attorneys', consultants' and expert fees it is

sufficient that the bills of Plaintiffs' attorneys, experts and consultants submitted to Peerless be in a

form consistent with the normal billing practices of such attorneys and consultants as is acceptable

to Plaintiffs.

> Respectfully submitted,
> Bearbones, Inc.,
> Amaral Enterprises LLC,
> Plaintiffs,
> By their attorney,
>
> /s/ Richard W. Gannett
> _____
> Richard W. Gannett, Esquire
> Massachusetts Bar #184430
> rwgannett@gannettlaw.com
> Gannett & Associates
> 165 Friend Street, Suite 200
> Boston, MA 02114-2025
> (617) 367-0606

Dated: March 11, 2016