UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BEARBONES, INC., )
d/b/a MORNINGSIDE BAKERY, )
and AMARAL ENTERPRISES LLC, )
    Plaintiffs, ) Civil Action No. 3:15-30017-KAR
     )
v. )
     )
PEERLESS INDEMNITY )
INSURANCE COMPANY, )
    Defendant. )

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION TO SUPPLEMENT
(Dkt. No. 40)

ROBERTSON, U.S.M.J.

    I.    INTRODUCTION

Before the court is the motion of the plaintiffs, Bearbones, Inc., d/b/a Morningside Bakery ("Morningside"), and Amaral Enterprises LLC ("Amaral"), to file a supplemental complaint pursuant to Fed. R. Civ. P. 15(d) (Dkt. No. 40). The defendant, Peerless Indemnity Insurance Co. ("Peerless" or "Defendant"), opposes the motion (Dkt. No. 43). The parties have consented to this court's jurisdiction (Dkt. No. 36). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, Plaintiffs' motion is DENIED.

II.       F<small>ACTUAL</small> B<small>ACKGROUND AND</small> P<small>ROCEDURAL</small> H<small>ISTORY</small>

    A.  The Loss[1]

Morningside, a Massachusetts corporation, operated a commercial bakery located inside a commercial condominium unit owned by Amaral, a related Massachusetts limited liability company[2] (Dkt. No. 40-1 at ¶¶ 1-2). Morningside and Amaral (collectively, "Plaintiffs") purchased commercial casualty insurance from Peerless. The Peerless policy provided four categories of coverage, consisting of "Building," "Business Personal Property," "Business Income," and "Extra Expense" (*id.* at ¶¶ 6-7, 22).

On or about February 19, 2013, "massive amounts of water emanating from a frozen pipe destroyed [Plaintiffs'] business premises, its equipment, its business operation and its overall viability rendering both [Morningside and Amaral] a total loss" (*id.* at ¶ 8). Plaintiffs notified Peerless on or about the day of the incident (*id.* at ¶¶ 6, 13). Plaintiffs did not receive any written response from Peerless until April 19, 2013, nearly 60 days later (*id*. at ¶ 13). On April 15, 2013, Plaintiffs communicated a demand to Peerless, but Peerless ignored it (*id*. at ¶ 16). According to Plaintiffs, while their losses exceed $1.5 million, Peerless has paid Plaintiffs only $28,401.99 (*id.* at ¶¶ 9-10, 15). Plaintiffs accuse Peerless of "substantial and unwarranted delay" in adjusting their claim and of having a deficient claims handling process (*id*. at ¶ 19). They also claim that Peerless forces its insureds to initiate lawsuits to achieve compensation (*id*. at ¶¶ 19, 23).

---

[1] The facts are drawn from Plaintiffs' supplemental complaint and stated in the light most favorable to them. *See Stanton v. Metro Corp.*, 438 F.3d 119, 123-24 (1st Cir. 2006).
[2] The sole member of Amaral is Brian A. Amaral, a resident of New York (Dkt. No. 49).

B. Plaintiffs' Original Federal Complaint

On February 6, 2015, Plaintiffs filed a three-count diversity complaint against Peerless in this court. In it, Plaintiffs seek: (I) a declaratory judgment that Peerless is obligated to provide coverage for all of Plaintiffs' losses, compensatory and consequential, as a result of the incident; (II) damages for breach of contract; and (III) damages for unfair business and claims settlement practices in violation of Mass. Gen. Laws chs. 93A and 176D (Dkt. No. 1 at ¶¶ 25-36).

C. Reference Proceeding

Massachusetts requires insurance companies issuing certain policies covering property or interests in the Commonwealth to use standard forms as set forth in Mass. Gen. Laws ch. 75, § 99. One provision in the Massachusetts standard policy provides as follows:

> In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss ….

Mass. Gen. Laws ch. 175, § 99, cl. twelfth. The parties had commenced the above-described reference process when Plaintiffs filed their original complaint on February 6, 2015 (Dkt. No. 1 at ¶ 24; Dkt. No. 40-1 at ¶ 24), but the proceeding did not conclude until five months later, on July 6, 2015 (Dkt. No. 14; Dkt. No. 43-12).[3] The Referees' unanimous award was as follows:

---

[3] In ruling on a motion to dismiss, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted to one for summary judgment." *Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for

Building Loss at replacement cost – $31,111.26, and at actual cash value and after application of the deductible – $26,116.77; Business Personal Property Loss at replacement cost – $26,842.22; Business Income Loss – $35,929.00; and Extra Expense Loss – $324.25 (*id*.).

### D. Plaintiffs' Supplemental Complaint

Plaintiffs now seek to file a supplemental complaint adding five counts against Defendant, all of which relate to the reference proceeding. Three of Plaintiffs' proposed counts are for additional alleged violations of Mass. Gen. Laws chs. 93A and 176D. Specifically, in Counts IV and V, Plaintiffs claim that they were subjected to unfair business and claims settlement practices during the reference proceeding because Peerless called two witnesses it claimed were experts, but who were neither independent nor objective (Dkt. No. 40-1 at ¶¶ 37-48). Count IV relates to Peerless witness Mary A. Mull, a Certified Public Accountant ("CPA"), who testified that "an oath she signs ensures she is both objective and independent" (*id*. at ¶41). According to Plaintiffs, however, she is neither because "she has worked for Liberty Mutual or Peerless or an affiliate for 29 years, her entire professional career," (*id*. at ¶ 40), and she "had no reasonable response to cross-examination questions which challenged her objectivity and independence when her livelihood, paycheck and pension are dependent upon testifying in the way Liberty Mutual tells her to" (*id*. at ¶ 41). Count V relates to Peerless witness Bruno Graizzaro, also a CPA, and, for 16 years, an "active co-partner in a real estate business in

---

official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id*. (citing *Watterson*, 987 F.2d at 3). Here the court cites to the July 6, 2015 Referees' Award. The court may properly consider the Award because neither party disputes its authenticity. Plaintiffs filed the Award previously, in opposition to Defendant's motion to dismiss Plaintiffs' original complaint on abstention grounds (Dkt. No. 14), while Defendant filed the Award in opposition to the instant motion to supplement (Dkt. No. 43-12). Further, Plaintiffs' proposed supplemental claims relate to the reference proceeding, of which the Award is a part.

Plymouth County Massachusetts" with William O. Monahan, "the principal Peerless attorney in this lawsuit, in [a related proceeding in Massachusetts state court,] and at Reference" (*id*. at ¶¶ 44-45). Plaintiffs claim that Graizzaro's relationship with Monahan prevents him from being objective and independent and that Defendant hid the relationship from the Plaintiffs and referees (*id*. at ¶¶46-47). Nevertheless, on cross-examination of Graizzaro, Plaintiffs "unmasked [Peerless] as facilitating, encouraging, [sic] funding testimony of so-called experts who are neither objective nor independent but are controlled by Peerless" (*id*. at ¶ 48; *see also* Dkt. No. 41 at p. 2 and 41-1). In proposed Count VI, Plaintiffs claim that Defendant engaged in unfair claims settlement practices by refusing to resolve Plaintiffs' claim "despite being advised that its counsel was impermissibly in business with its so-called expert giving the appearance Liberty Mutual purchases favorable testimony it desires" (Dkt. No. 40-1 at ¶ 51), and by "engaging in various acts of trickery and deceit against its insured," including "harassing the insured with requests for false stipulations to be entered into [the Electronic Case Filing System] which could result in the insured waiving its claims," and claiming that it has never received written discovery from Plaintiffs when it is in possession of all of Plaintiffs' written discovery (*id*. at ¶ 52).

In Count VII, Plaintiffs seek a declaration that Mass. Gen. Laws ch. 175, § 99, cl. twelfth is unconstitutional. Specifically, Plaintiffs claim that the reference proceeding violates the access to justice principles protected by art. 11 of the Declaration of Rights of the Massachusetts Constitution, which guarantees each person the right "to obtain right and justice freely, and without being obliged to purchase it, completely, and without any denial, promptly, and without delay; conformably to the laws" (*id*. at ¶ 55).

Finally, in Count VIII, Plaintiffs purport to state a class action with the following proposed subclasses:

> A. Those insureds, anywhere in the world, who submitted their claim to Reference, or a similar such proceeding, in any jurisdiction throughout the world, and were awarded higher payments by Referees, or a similar judge like body, than Peerless, or another unit of Liberty Mutual, paid such insureds voluntarily prior to the commencement of any Reference, or a similar such proceeding;
>
> B. Those insureds anywhere in the world who were forced to go to Reference, or a similar such proceeding, to the extent Reference (or a similar statute) is found or held to be unconstitutional as currently applied;
>
> C. Those insureds anywhere in the world whose claims or losses were valued by CPA Graizzaro and where he failed to disclose his business partnership with Atty. Monahan.

(*id*. at ¶ 59).

### III. THE APPLICABLE STANDARD

"Rule 15(d) affords litigants a pathway for pleading 'any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.'" *U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4 (1st Cir. 2015). "Under Rule 15(d), the filing of a supplemental pleading is not available to the pleader as a matter of right but, rather, is subject to the court's discretion." *Id*. at 6 (citing *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 90 (1st Cir. 2008)). "As written, Rule 15(d) contains no standards at all to guide the district court's analysis; it merely authorizes the district court to permit service of a supplemental pleading 'on just terms.'" *Id*. at 7. The First Circuit condones treating requests to supplement under Rule 15(d) liberally, "reminiscent of the way in which courts have treated requests to amend under Rule 15(a)'s 'freely give[n]' standard." *Id*. (alteration in original) (citations omitted). "[A] district court faced with a Rule 15(d) motion must weigh the totality of the circumstances, just as it

would under Rule 15(a)." *Id.* (citing *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006)). Factors that may suffice to ground a denial of a Rule 15(d) motion to supplement include unreasonable delay by the moving party, prejudice to the opposing party, undue delay to the resolution of the case, and futility. *Id*. at 7 (citations omitted).

"In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122 (1st Cir. 2006) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). Thus, the court "accept[s] as true all well-pleaded facts in the complaint and draw[s] all reasonable inferences in the pleader's favor." *Guerra-Delgado v. Popular, Inc*., 774 F.3d 776, 780 (1st Cir. 2014) (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For a claim to have facial plausibility, "th[e] factual content, … taken [as true], '[must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). "'The make-or-break standard … is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.'" *Id*. (quoting *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010)).

IV.  Discussion

A.  Additional Mass. Gen. Laws chs. 93A and 176D Claims

Massachusetts's consumer protection statute, Mass. Gen. Laws ch. 93A, declares unlawful "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Section 3 of Mass. Gen. Laws ch. 176D "prohibits 'unfair or

deceptive acts or practices in the business of insurance,' and § 3 (9) enumerates acts and omissions that constitute unfair claim settlement practices,'" *Hopkins v. Liberty Mut. Ins. Co.*, 750 N.E.2d 943, 949-50 (Mass. 2001) (quoting Mass. Gen. Laws ch. 176D, § 3)), as follows:

    (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
    (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
    (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
    (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
    (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
    (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
    (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
    (h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;
    (i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;
    (j) Making claims payments to insured or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;
    (k) Making known to insured or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements of compromises less than the amount awarded in arbitration;
    (l) Delaying the investigation or payment of claims by requiring that an insured or claimant, or the physician of either, submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

> (m) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; or
> (n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Mass. Gen. Laws ch. 176D, § 3 (9).

Chapter 176D does not provide a private right of action. *Silva v. Steadfast Ins. Co.*, 35 N.E.3d 401, 405 (Mass. App. Ct. 2015) (citations omitted). Instead, to proceed against an insurer who has violated any of the provisions of Mass. Gen. Laws ch. 176D, § 3 (9), a business plaintiff must bring a claim under Mass. Gen. Laws ch. 93A, § 11.[4] *See id.* "There is no one-to-one relationship between chapter 176D and chapter 93A." *Cont'l Ins. Co. v. Bahnan*, 216 F.3d 150, 157 (1st Cir. 2000). *See also Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co.*, 802 F.3d 39, 54 (1st Cir. 2015) ("[A] violation of Chapter 176D constitutes only probative evidence, not per se proof, of egregious business misconduct for a Chapter 93A, § 11 business-to-business claim."). Because "violations of chapter 176D run the gamut from those that are somewhat technical to those that are gravely offensive[,] …. conduct that abridges the unfair claim practice

---

[4] Section 11 of Mass. Gen. Laws ch. 93A affords a private remedy to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property … as a result of the use or employment by another person who engages in any trade or commerce of an … unfair or deceptive act or practice …." Mass. Gen. Laws ch. 93A, § 11. *See also Lantner v. Carson*, 373 N.E.2d 973, 976 (Mass. 1978). Section 9 of ch. 93A extends the same remedy to individual consumers. *Id*. Plaintiffs do not identify either section as the basis for their claims, but Plaintiffs are both business entities alleged to have been acting in a business context. As such, § 11 for business-to-business claims is the applicable section. *Silva*, 35 N.E.3d at 406 (concluding that an action brought by the owner of an automotive repair business damaged by the insured against the insurer belonged under § 11 because the parties "were all engaged in trade or commerce during the claims, incidents, and transactions at issue").

9

statute may or may not abridge the unfair trade practice statute."[5] *Bahnan*, 216 F.3d at 150

(citing *F.C.I. Realty Tr. v. Aetna Cas. & Sur. Co.*, 906 F. Supp. 30, 32 n.1 (D. Mass. 1995);

*Kiewit Constr. Co. v. Westchester Fire Ins. Co.*, 878 F. Supp. 298, 301-02 (D. Mass. 1995);

*Emp'rs Ins. of Wausau v. George*, 673 N.E.2d 572, 579 (Mass. App. Ct. 1996)). "Hallmarks of

… misconduct [that violates both chs. 93A and 176D] generally involve the 'absence of good

faith and the presence of extortionate tactics.'" *Peabody Essex Museum*, 802 F.3d at 54 (quoting

*Guity v. Commerce Ins. Co.*, 631 N.E.2d 75, 77-78 (Mass. App. Ct. 1994)). "Such circumstances

include withholding payment from the insured and 'stringing out the process' by using shifting,

specious defenses with the intent to force the insured into an unfavorable settlement." *Id*. (citing

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000)).

Through their supplemental complaint, Plaintiffs seek to add two chs. 93A and 176D claims in connection with Peerless's presentation of expert testimony from Mary Mull, CPA, and Bruno Graizzaro, CPA, at the reference proceeding. Plaintiffs do not identify which of the fourteen subparagraphs of Mass. Gen. Laws ch. 176D, § 3 (9) Peerless purportedly violated by presenting Ms. Mull's and Mr. Graizzaro's testimony, and none appear applicable. Instead, Plaintiffs generally characterize Peerless's actions as "unfair," "fraud[ulent], and deceit[ful]" (Dkt. No. 40-1 at ¶¶ 39, 42, 48).

---

[5] "[I]n contrast … c[h.] 93A, § 9 [for consumer-to-business claims] … has been amended to allow consumers to bring c[h.] 93A claims alleging violations of c[h.] 176D without regard to whether those violations constitute an unfair business practice under c[h.] 93A, § 2." *Silva*, 35 N.E.3d at 406 (citing *Polaroid Corp. v. Travelers Indem. Co.*, 610 N.E.2d 912, 917 (Mass. 1993); *DiVenuti v. Reardon*, 637 N.E.2d 234, 239 (Mass. App. Ct. 1994)). *See also Peabody Essex Museum*, 802 F.3d at 54 (noting that for "consumer claims under Chapter 93A, § 9, a violation of Chapter 176D constitutes … per se proof[] of egregious business misconduct").

Plaintiffs' supplemental complaint does not set forth sufficient facts to support an inference that Peerless acted in an unfair, fraudulent, or deceptive manner in relation to its introduction of testimony from Ms. Mull and Mr. Graizzaro at the reference proceeding. There is nothing improper (or even unusual) about a company eliciting testimony from an employee about a transaction or occurrence in issue, including testimony that draws on that employee's particular area of expertise, such as accounting. To the extent Plaintiffs believe that Ms. Mull's long-standing employment relationship with Peerless or its affiliates rendered her testimony biased toward Peerless and unreliable, Plaintiffs had the opportunity to impeach her on cross-examination. Indeed, Plaintiffs apparently attempted to do so, insofar as they have alleged that Ms. Mull "had no reasonable response to cross-examination questions which challenged her objectivity and independence when her livelihood, paycheck and pension are dependent upon testifying in the way Liberty Mutual tells her to" (Dkt. No. 40-1 at ¶ 41). It was up to the referees to determine whether or not to credit Ms. Mull's testimony in light of that potential bias. *See Shealey v. Federal Ins. Co.*, 946 F. Supp. 2d 193, 199 (D. Mass. 2012) (noting that the reference panel's factual findings are not subject to challenge).

Similarly, it is not improper (or unusual) for expert witnesses to receive financial compensation for their testimony. *See, e.g.*, Fed. R. Civ. P. 26(a)(2)(B) (requiring parties to produce "a statement of the compensation to be paid for the study and testimony in th[e] case," for all testifying expert witnesses). Plaintiffs suggest that Mr. Graizzaro had a financial interest in providing testimony favorable to Peerless vis-à-vis a real estate venture he has with Mr. Monahan, but they do not allege facts that would support such an inference. Moreover, to the extent that Plaintiffs believe that Mr. Graizzaro had a financial interest of some kind that rendered his testimony unreliable, Plaintiffs had the opportunity to develop the point on cross-

examination. Again, Plaintiffs apparently took that opportunity and "unmasked [Peerless] as facilitating, encouraging, funding testimony of so-called experts who are neither objective nor independent but are controlled by Peerless" (Dkt. No. 40-1 at ¶ 48). The decision whether or not to credit Mr. Graizzaro's testimony in light of his potential biases belonged to the referees. *See Shealey*, 946 F. Supp. 2d at 199. Thus, Plaintiffs' allegations do not state a facially plausible claim that Peerless violated any of the sub-paragraphs of Mass. Gen. Laws ch. 176D, § 3 (9), or acted in bad faith or used extortionate tactics in violation of Mass. Gen. Laws ch. 93A§ 11 in connection with Peerless's presentation of testimony from Ms. Mull and Mr. Graizzaro at the reference proceeding, and Peerless's claims based thereon are subject to dismissal as futile.

Plaintiffs' third proposed chs. 93A and 176D claim is premised on Peerless's refusal to settle Plaintiffs' claim and its use of "various acts of trickery and deceit" in this litigation, including "request[ing] false stipulations to be entered into ECF, which could result in [Plaintiffs] waiving its claims," and "deliver[ing] untrue demand letters claiming Peerless has never received written discovery from [Plaintiffs], when, in fact, Peerless has possession of all of the insured's written discovery" (*id*. at ¶¶ 51- 52). Once again, Plaintiffs have not identified which of the fourteen subparagraphs of Mass. Gen. Laws ch. 176D, § 3 (9) Peerless purportedly violated through these actions, but the allegations seem to align with subparagraph (f), which prohibits "failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Mass. Gen. Laws ch. 176D, § 3 (9) (f).

Plaintiffs already allege a violation of subparagraph (f) in their original complaint based on Peerless's pre-litigation conduct (Dkt. No. 1 at ¶ 34(f)). To the extent that Peerless has engaged in bad faith litigation tactics as Plaintiffs claim, they would not represent a separate violation of Mass. Gen. Laws ch. 176D, § 3 (9), but rather, a continued course of conduct in

violation of the statute that began before the lawsuit commenced. *See Hopkins v. Liberty Mut. Ins. Co.*, 750 N.E.2d 943, 949 (1st Cir. 2001) (noting the "general rule that a continuing breach of a statutory duty is usually considered a single violation of the statute and not a series of separate violations"); *Trenwick Am. Reins. Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274, 307 (D. Mass. 2011) ("While there may be debate concerning whether litigation tactics alone can comprise a Chapter 93A violation, there is no debate concerning whether such tactics can be considered along with egregious, bad faith pre-litigation conduct"). Thus, Defendant's alleged continued refusal to settle and bad faith litigation tactics may be relevant to proving Plaintiffs' existing Mass. Gen. Laws chs. 93A and 176D claim, but they do not state a separate claim under the same statutes, and Plaintiffs' additional count is subject to dismissal.

    B. <u>Constitutionality of Mass. Gen. Laws ch. 175, § 99, cl. twelfth</u>[6]

"A facial challenge to the constitutional validity of a statute is the weakest form of challenge, and the one that is the least likely to succeed." *Blixt v. Blixt*, 774 N.E.2d 1052, 1056 (Mass. 2002) (citing *United States v. Salerno,* 481 U.S. 739, 745 (1987)). "It is well-settled that a 'statute is presumed to be constitutional and every rational presumption in favor of the statute's validity is made.'" *Gillespie v. City of Northampton*, 950 N.E.2d 377, 382 (Mass. 2011) (quoting *Pielech v. Massasoit Greyhound, Inc*., 804 N.E.2d 894, 898 (Mass. 2004)). "The challenging

---

[6] Defendant opposed Plaintiffs' constitutional challenge to Mass. Gen. Laws ch. 175, § 99, cl. twelfth largely for failure to comply with Fed. R. Civ. P. 5.1's requirement that "[a] party that files a pleading … drawing into question the constitutionality of a …state statute must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if: … (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and (2) serve the notice and paper … on the state attorney general if a state statute is questioned – either by certified or registered mail …." While Plaintiffs did not file the prescribed notice, they have served the motion to supplement and memorandum in support, along with the exhibits, on Attorney General Maura T. Healey, by certified mail (Dkt. Nos. 44, 45).

party bears the burden of demonstrating 'beyond a reasonable doubt that there are no "conceivable grounds" which could support its validity.'" *Id*. (quoting *Leibovich v. Antonellis*, 574 N.E.2d 978, 984 (Mass. 1991)).

Plaintiffs seek a declaration that Mass. Gen. Laws ch. 175, § 99, cl. twelfth violates art. 11 of the Massachusetts Declaration of Rights, which guarantees each person the right "to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." "The free access to the courts guaranteed to each citizen by art. 11 requires that all cases be decided by a judge, and that litigants need not 'purchase' access to justice." *Ventrice v. Ventrice*, 26 N.E.3d 1128, 1131 (Mass. App. Ct. 2015) (citing *Bower v. Bournay-Bower*, 15 N.E.3d 745, 755 n.12 (Mass. 2014); *Graizzaro v. Graizzaro*, 627 N.E.2d 951, 953 (Mass. App. Ct. 1994); *Boddie v. Connecticut*, 401 U.S. 371, 380-382 (1971)). Plaintiffs argue that the ch. 175, § 99, cl. twelfth reference proceeding violates both guarantees because it "requires the insured to purchase justice (by expending significant sums of money to pay for 'judges' called referees, to pay rent for a locale for the 'judges' to work or hear evidence)," and referees – not judges – determine the amount of loss (Dkt. No. 40 at p. 2).

Plaintiffs rely on *Bower v. Bournay-Bower*, 15 N.E.3d 745 (Mass. 2014), to support their claim for declaratory relief as to the unconstitutionality of Mass. Gen. Laws ch. 175, § 99, cl. twelfth. In *Bower*, the Supreme Judicial Court of Massachusetts ("SJC") vacated a probate court order appointing a parent coordinator over the objection of one parent and granting that coordinator binding authority to resolve conflicts between the parents. *Id*. at 759. "While recognizing that courts have the inherent power to appoint dispute resolution officials in appropriate circumstances, the [SJC] stressed that it is the judge – and, absent agreement of the

14

parties, only the judge – who shall make the final, binding decision in each case." *Ventrice*, 26 N.E.3d at 1131-32. *See also Gustin v. Gustin*, 652 N.E.2d 610, 612 (Mass. 1995) (holding that that a judge may not compel a party to submit to binding arbitration without a party's consent). The *Bower* court went on to state in dicta that any preconditions that require the use of costly services like parent coordinators prior to filing a court action may implicate the free access provision of art. 11 of the Declaration of Rights. *Bower*, 15 N.E.3d at 756 n.12. The issue was not before the court, however, because the father had consented to pay for the services of the parent coordinator. *Id*.

This case is readily distinguishable from *Bower*. The reference proceeding did not take place over the objection of either party; Plaintiffs "undertook a business decision to purchase casualty insurance (Dkt. No. 40-1 at p. 7), and, pursuant to the policy, both Plaintiffs and Defendant agreed to submit disputes about the amount of loss to reference, agreed that the award of the majority of the referees would be conclusive and final as to the amount of loss, and agreed that, unless waived by the parties, the reference proceeding would be a precondition to filing an action to recover for the loss. *Kiley v. Metro. Prop. & Cas. Ins. Co.*, 159 F. Supp. 3d 135, 143 (D. Mass. 2016) ("Both the language of the policy provision and the language of the statute provide that the parties to the contract mutually agree that there be a reference proceeding should the parties fail to agree on the amount of loss …."); *F.C.I. Realty Trust*, 906 F. Supp. at 33 (noting the "contractual requirement that there be a reference before there be a law suit"). The critical nature of this distinction is highlighted in *Gravlin v. Gravlin*, 49 N.E.3d 677 (Mass. App. Ct. 2016), in which the court held that a probate court judge did not impermissibly delegate authority to an arbitrator where the parties to the divorce agreed to remove their case from consideration by a judge and have it decided through binding arbitration. *Id*. at 680. "When

such an agreement exists, no improper delegation of a judge's authority follows." *Id*. In this case, not only did Plaintiffs agree to submit the question of the amount of loss or damage to reference when they purchased the policy, but also, Plaintiffs participated in the reference proceeding (Dkt. No 40-1 at ¶¶ 24, 41, 48).

Plaintiffs' reliance on the dicta in *Bower* to the effect that any precondition to suit that requires the use of a costly service may implicate art. 11 is likewise unavailing.[7] *Id.*, 15 N.E.3d at 756 n.12. "The object of th[e] [no purchase of justice] provision is to guarantee the availability of equal justice, 'that all litigants similarly situated may appeal to the courts both for relief and for defense under like conditions and with like protection and without discrimination.'" *Paro v. Longwood Hosp.*, 369 N.E.2d 985, 991 (Mass. 1977) (quoting *Old Colony R.R. v. Assessors of Boston*, 35 N.E.2d 246, 253 (Mass. 1941) (addressing whether a $2,000 or higher bond requirement for non-indigent plaintiffs to continue medical malpractice actions after a malpractice tribunal has found insufficient evidence to raise a legitimate question of liability would violate art. 11's purchase of justice provision and finding that it did not). Accordingly, "[w]here … the [challenged] statute does not pertain to a suspect class, … involves a right … that is not fundamental, … and is rationally related to achieving its purpose, it passes

---

[7] Of note, Plaintiffs fail to allege in their supplemental complaint that they incurred any costs in connection with the reference proceeding. Plaintiffs argue in their motion to supplement that section 99 "requires the insured to … expend[] significant sums of money to pay for 'judges' called referees, [and] to pay rent for a locale for the 'judges' to work or hear evidence" (Dkt. No. 40 at p. 2). Plaintiffs also argue in their memorandum in support of their motion that they were "forced to pay over $30,000.00 in fees before [they] w[ere] allowed access to any court" (Dkt. No. 41 at p. 4). There are no supporting allegations in the supplemental complaint, however, and that omission alone could justify denial of Plaintiffs' motion to supplement the complaint adding the claim for declaratory relief as to the unconstitutionality of the statute.

constitutional muster." *Longval v. Superior Ct. Dep't of the Trial Ct.*, 752 N.E.2d 674, 677 (Mass. 2001) (citations omitted).

Plaintiffs have not alleged that they are being treated differently than any other class of insureds under policies issued with the same mandatory language, let alone that they are part of a suspect class. *See Old Colony R.R.*, 35 N.E.2d at 253 (rejecting a challenge to a statute requiring only persons owing a real estate tax in excess of $1,000 to pay such tax as a predicate to seeking an abatement because "[t]he appellant had the right to a hearing on its contention of overvaluation, upon the same conditions that governed the exercise of a similar right in the same class to which it belonged [and] [i]t was entitled to nothing more."). Nor have Plaintiffs alleged that Mass. Gen. Laws ch. 175, § 99, cl. twelfth reaches a fundamental right. *See Longval*, 752 N.E.2d at 677 (noting that "*free* access to courts" is not a fundamental right). Accordingly, to pass constitutional muster, the statutory reference proceeding need only be rationally related to achieving its purpose.[8]

Plaintiffs have not alleged that the statute is not rationally related to achieving its purpose, identified as "'provid[ing] a summary method of establishing the amount of loss,' *Hanley v. Aetna Ins. Co.*, 102 N.E. 641, 643 (1913), and … 'expedit[ing] the equitable settlement of claims." *M.A.S. Realty Corp. v. Travelers Cas. & Surety Co. of Ill.*, 196 F. Supp. 2d 41, 44 (D. Mass. 2002) (quoting *Emp'rs' Liab. Assurance Corp., Ltd., v. Traynor*, 237 N.E.2d 34, 34 (Mass. 1968)). For this reason, Plaintiffs' claim for declaratory relief as to the

---

[8] By contrast, in *Bower*, the court was addressing issues related to custody and visitation of the parties' children, and parents have a fundamental right to make decisions concerning the care, custody, and control of their children." *Blixt*, 774 N.E.2d at 653 (quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000)). "When a fundamental right is at stake, the so-called 'strict scrutiny' formula for examining the constitutionality of State infringement on that right comes into play." *Id*. at 655 (citing *Aime v. Commonwealth*, 611 N.E.2d 204, 209 (Mass. 1993)).

17

unconstitutionality of Mass. Gen. Laws ch. 99, § 175, cl. twelfth is subject to dismissal as futile. *See Gillespie*, 950 N.E.2d at 388 (affirming judgment in favor of the defendant city on plaintiffs' art. 11 claim based, *inter alia*, on the conclusion that the challenged statute, which imposed a filing fee to obtain judicial review of a municipal parking clerk's final decision, did not violate "art. 11's purchase of justice clause, where the statutory scheme is supported by a rational basis" (citing *Longval*, 752 N.E.2d at 674)).

    C. Class Action

Finally, the court turns to Plaintiffs class action allegations. "A motion to strike collective action allegations is … analyzed under the 12(b)(6) standard." *Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 145 (D. Mass. 2013) (citation omitted). At the motion to dismiss stage, the "question before the Court … is not whether the class should be certified, but whether the class allegations in the complaint should be stricken. At this stage, the burden is not on the party seeking class certification[;] rather, as the non-moving party, all reasonable inferences must be construed in [his] favor."[9] *Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1 (D. Mass. 2003) (quoting *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 451 (D.R.I. 2002)). While "[c]ourts generally will not conduct a full inquiry into collective action allegations at this stage, … collective action claims must nonetheless create a plausible entitlement to relief by putative class members to survive a motion to dismiss." *Cavallaro*, 971 F. Supp. 2d at 152 (citing *Landry v. Peter Pan Bus Lines, Inc.*, No. 09-11012-RWZ, 2009 WL

---

[9] In arguing against class certification, Peerless relies principally on *Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001), as establishing that "[t]he party seeking certification of a class … bears the burden of establishing that all of the prerequisites for a class action have been met" (Dkt. No. 43 at pp. 9-10). Peerless may be correct about the standard to apply when ruling on a motion for class certification as the *Berger* court was, but, in this case, the court is ruling on a motion to dismiss class allegations, not a motion to certify a class.

9417053, at *1 (D. Mass. Nov. 20, 2009)). "In order to proceed, a plaintiff must properly allege a factual basis showing that there are similarly situated persons entitled to relief … and/or that common issues of fact predominate sufficiently to satisfy the traditional Fed. R. Civ. P. 12(b)(6) standard." *Id*. (citing *Landry*, 2009 WL 9417053, at *1).

Plaintiffs fail to meet these requirements. Plaintiffs proposed subclasses are:

> A. Those insured, anywhere in the world, who submitted their claim to Reference, or a similar such proceeding, in any jurisdiction throughout the world, and were awarded higher payments by Referees, or a similar judge like body, than Peerless, or another unit of Liberty Mutual, paid such insureds voluntarily prior to the commencement of any Reference, or a similar such proceeding;
>
> B. Those insureds anywhere in the world who were forced to go to Reference, or a similar such proceeding, to the extent Reference (or a similar statute) is found or held to be unconstitutional as currently applied;
>
> C. Those insureds anywhere in the world whose claims or losses were valued by CPA Graizzaro and where he failed to disclose his business partnership with Atty. Monahan.

(*Id*. at ¶ 59). Subclasses B and C are dispensed with easily. Plaintiffs fail to state a claim as to their own entitlement to a declaration that Mass. Gen. Laws ch. 175, § 99, cl. twelfth is unconstitutional or to damages pursuant to Mass. Gen. Laws chs. 93A/176D in connection with Mr. Graizzaro's testimony, and, therefore, cannot state a claim on behalf of others similarly situated. Subclass A fares no better. The mere fact that an insured was awarded a higher amount in reference than Peerless originally paid does not automatically state a claim for unfair business and claims settlement practices under ch. 93A and 176D, and Plaintiffs do not provide any factual basis for inferring that they and other potential plaintiffs were subject to a common policy or plan that violated ch 176D, § 3 (9), let alone one egregious enough to amount to a violation of

19

ch. 93A.[10]  Thus, Plaintiffs fail to provide any factual basis that other similarly situated people are entitled to relief under chs. 93A and 176D.  Accordingly, Plaintiffs' class allegations should be stricken.

    V.    <u>Conclusion</u>

For the reasons set forth above, Plaintiffs' motion to supplement its complaint by adding three counts pursuant to Mass. Gen. Laws chs. 93A and 176D, adding a count for declaratory relief as to the unconstitutionality of Mass. Gen. Laws, ch. 175, § 99, cl. twelfth, and adding collective action allegations is denied in its entirety.


DATED:  October 11, 2016                    <u>/s/ Katherine A. Robertson</u>
                                                  KATHERINE A. ROBERTSON
                                                  U. S. MAGISTRATE JUDGE

---

[10] Plaintiffs' proposed subclass A has other deficiencies as well, such as failing to limit the claims to those where the acts and practices said to constitute a violation of ch. 93A, § 11 occurred "primarily and substantially within the commonwealth," as § 11 requires.  *Compagnie De Reassurance D'lle de France v. New England Reinsurance Corp.*, 57 F.3d 56, 89 (D. Mass. 1995).  The court need not go into all of these deficiencies, however, having already determined that Plaintiffs' proposed sub-class fails to state a claim for collective relief at the most basic level.