UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BEARBONES, INC., | ) | |
| d/b/a MORNINGSIDE BAKERY, | ) | |
| and AMARAL ENTERPRISES LLC, | ) | |
|     Plaintiffs, | ) | Civil Action No. 3:15-30017-KAR |
| | ) | |
| v. | ) | |
| | ) | |
| PEERLESS INDEMNITY | ) | |
| INSURANCE COMPANY, | ) | |
|     Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT, PEERLESS INDEMINITY INSURANCE COMPANY'S MOTION FOR
SUMMARY JUDGMENT AND BEARBONES, INC. d/b/a MORNINGSIDE BAKERY AND
AMARAL ENTERPRISES LLC MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST PEERLESS INDEMINITY INSURANCE COMPANY UNDER FED. R. CIV. P. 56
(Dkt. Nos. 85 & 88)

ROBERTSON, U.S.M.J.

## I.     Introduction

This case arises out of a February 19, 2013 incident in which a frozen pipe burst causing

water damage to a Pittsfield, Massachusetts commercial bakery (the "Bakery") operated by

plaintiff Bearbones, Inc., d/b/a Morningside Bakery ("Bearbones") in a commercial

condominium unit located at 283 Tyler Street, Pittsfield, MA, ("the condominium unit") owned

and operated by plaintiff Amaral Enterprises, LLC ("Amaral") (collectively, "Plaintiffs").  In

their verified complaint, Plaintiffs allege that their insurer, Peerless Indemnity Insurance

Company ("Peerless" or "Defendant"), failed to pay for their covered losses resulting from the

incident and engaged in unfair claims settlement practices.  Plaintiffs assert claims for breach of

contract (Count II) and for unfair and deceptive acts or practices in violation of Mass. Gen. Laws

ch. 93A and ch. 176D (hereinafter, "Chapter 93A" and "Chapter 176D") (Count III).[1]  The

parties have filed cross motions for summary judgment.  Defendant seeks summary judgment in

its favor as to both the breach of contract and Chapters 93A and 176D claims, while Plaintiffs

seek partial summary judgment in their favor only on their Chapters 93A and 176D claim.

The parties have consented to this court's jurisdiction (Dkt. No. 36).  *See* 28 U.S.C. §

636(c); Fed. R. Civ. P. 73.  For the following reasons, the court DENIES Plaintiffs' motion and

ALLOWS Defendant's motion.

## II.    Standard of Review

Summary judgment is appropriate where, "the pleadings, depositions, answers to

interrogatories and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)).

"A factual dispute is 'genuine' if 'it may reasonably be resolved in favor of either party' and,

therefore, requires the finder of fact to make 'a choice between the parties' differing versions of

the truth at trial.'"  *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005) (quoting *Garside v.

Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (citations and internal quotation marks

omitted)).  "[A] fact is 'material' 'if its existence or nonexistence has the potential to change the

outcome of the suit.'"  *Jarvis v. Village Gun Shop, Inc.*, 805 F.3d 1, 7 (1st Cir. 2015) (citing

*Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010)).

---

[1] Plaintiffs also brought a declaratory judgment claim (Count I), but Plaintiffs did not address the claim in their opposition to Peerless's motion for summary judgment, and Plaintiffs' counsel advised the court at oral argument on the cross motions for summary judgment that Plaintiffs are not pursuing it.  Accordingly, the claim is dismissed.

In ruling on summary judgment, the court "view[s] 'the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" *Padilla-García v. Guillermo Rodríguez*, 212 F.3d 69, 73 (1st Cir. 2000) (quoting *Euromotion, Inc. v. BMW of N. Am., Inc.*, 136 F.3d 866, 869 (1st Cir. 1998)). A party seeking summary judgment is responsible for identifying those portions of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325). If the moving party meets its burden, "'the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Carroll*, 294 F.3d at 236). "'[T]he nonmoving party may not rest upon mere allegations or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial.'" *Id.* (second alteration in original) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). "'The test is whether, as to each essential element, there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* at 152-53 (quoting *DeNovellis*, 124 F.3d at 306). "Cross-motions for summary judgment require the district court to 'consider each motion separately, drawing all inferences in favor of each non-moving party in turn.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011)).

### III.    Findings of Fact[2]

Plaintiffs held a commercial business insurance policy with Peerless ("the Policy") effective from October 1, 2012 through October 1, 2013.  On February 19, 2013, a frozen pipe burst in the Bakery causing water damage to the Bakery's equipment, as well as to the realty.  Plaintiffs timely notified Peerless of the loss.

Two days later, on February 21, 2013, Matthew Mitchell, an adjustor for Peerless who was assigned to the loss, and Martin Scovill, an estimator from Interstate Restoration, inspected the loss.  The following day, Mr. Scovill prepared a loss estimate of $5,912.32 relative to some of the water damage to the building; Mr. Scovill noted in his estimate that "[m]itigation, drying, and cleaning work [was] being completed by others," and the "[p]roperty owner has plumber repairing the frozen lines."  Accordingly, Mr. Scovill noted that the repair scope was limited and might have to be revisited upon completion of the mitigation work.

On February 25, 2013, Plaintiffs forwarded Mr. Mitchell an estimate from Paul J. Murphy Plumbing & Heating regarding the cost to repair the plumbing and heating at the Bakery.  The estimate was $5,631.47 for the plumbing and $4,297.38 for the heating.

On February 27, 2013, Plaintiffs forwarded Mr. Mitchell an invoice from Catamount Response for emergency water mitigating and drying services rendered following the loss and an estimate from Catamount to finish remediation and cleanup of the claimed water damage.  The invoice was for $1,821.20, and the estimate was for $2,273.79.

In a document dated March 29, 2013, James Munoz, a commercial HVAC claims consultant with CIS who Peerless retained to review Mr. Murphy's estimates, indicated that he had determined that the estimates prepared by Mr. Murphy for the repairs to the plumbing and

---

[2] The facts are drawn from the parties' submissions and the exhibits referenced therein.

heating systems were in line with national standards and represented a fair and reasonable estimate to repair the damage to the HVAC systems.

On April 15, 2013, Plaintiffs' counsel, who is also counsel in the instant litigation, mailed a letter to Defendant notifying Defendant that he was representing Plaintiffs.

On April 16, 2013, Defendant issued a claim payment in the amount of $11,672.94, representing $15,841.17 in building damage less $3,168.23 in recoverable depreciation and a $1,000.00 deductible. The $15,841.17 figure is the sum of Mr. Scovill's $5,912.32 estimate and Mr. Murphy's $5,631.47 and $4,297.38 estimates.

On April 19, 2013, Mr. Mitchell directed email correspondence to Plaintiffs inquiring whether Plaintiffs planned to replace or repair the oven damaged in the loss and requesting documentation of Plaintiffs' efforts to find a replacement oven or repair the existing one. In the same correspondence, Mr. Mitchell indicated that, for Peerless to consider a claim for business income, Bearbones would have to submit financial documentation in order for Peerless to calculate a business income loss. Specifically, Mr. Mitchell requested a 2012 year tax return (or 2011 if 2012 was not yet available), monthly profit and loss or income statements, monthly or weekly sales records for the prior year through the period of restoration of business operations, and documentation of payroll if Bearbones was claiming payroll continued through the period of restoration.

On April 22, 2013, Defendant issued payment to Catamount Response in the amount of $4,094.99, representing the sum of the $1,821.20 invoice and the $2,273.79 estimate.

On April 26, 2013, Arthur Knight, an employee of Peerless, directed a letter to Plaintiffs' counsel advising that he was in receipt of Plaintiffs' counsel's April 15, 2013 letter of

representation. Mr. Knight indicated that Plaintiffs' claim remained open while Peerless awaited documentation to support the business income and business personal property claims.

On May 10, 2013, Peerless issued a second check to Bearbones and Lee Bank, the mortgage holder on the condominium unit, for $11,672.94. The "remarks" accompanying the check state that it is the "re-issue of prior payment: replacement cost $15,841.17, less recoverable depreciation of $3,168.23, less $1,000 deductible. This represents payment for building repairs." The Policy provides that Defendant "will pay for covered loss or damage to real estate to each mortgageholder shown in the Declarations, or in an attached schedule, in the order of precedence, as may appear." While it is undisputed that Lee Bank was the mortgage holder, the commercial property coverage part declarations page of the Policy lists the mortgage holder as "none," and there is no attached schedule listing Lee Bank as a mortgage holder.

On May 16, 2013, Mr. Mitchell directed correspondence to Plaintiffs' counsel requesting documents supporting Plaintiffs' business personal property claim concerning damage to the oven and Plaintiff's business income claim, specifically including days and hours of operation, daily sales for the period 1/1/13 to the present, payroll by pay period for the period 1/1/13 to the present, monthly sales tax returns for the period 1/1/12 to the present, monthly profit and loss statements for the period 1/1/11 to the present, and 2011 and 2012 income tax returns. The letter also advised that Peerless had retained the services of LWG Forensics to inspect the oven in question and provide an evaluation and indicated that Paul Mullen would be reaching out to arrange for the inspection.

On May 16, 2013, Plaintiffs' counsel emailed Mr. Mitchell the 2011 income tax return.

The following day, May 17, 2013, Mr. Mitchell emailed Plaintiffs' counsel, referencing and attaching the May 16, 2013 letter and indicating that Peerless "cannot properly calculate the

Business Income loss without the required documentation."  Mr. Mitchell also requested that Plaintiff's counsel cooperate with Mr. Mullen to set up an appointment to allow inspection of the oven.

Mr. Mullen inspected the oven on July 2, 2013, and issued a report on July 18, 2013, indicating that damage to the oven and two proofing boxes was consistent with exposure to water due to a frozen pipe bursting.  The estimated cost to replace the oven and proofing boxes was $33,456.30.

On July 25, 2013, Defendant issued payment in the amount of $16,728.15 to Bearbones. The "remarks" accompanying the check state "reimbursement for actual cash value of business personal property claim damages, reflecting recoverable depreciation of $16,728.15."

On August 6, 2013, Plaintiffs' counsel emailed Peerless a monthly summary of Plaintiffs' business from 2012.  Debra Allen Bok, an employee of Peerless, responded the following day, indicating that additional information was required to calculate a loss measure for the business income claim.

On August 30, 2013 and October 2, 2013, Mr. Mitchell sent letters to Plaintiffs' counsel indicating that Defendant had not received the requested documentation to compute Plaintiffs' loss of business income and again requesting the same list of materials requested in his May 16, 2013 correspondence.  In the October 2, 2013 letter, Mr. Mitchell also indicated that, if Defendant did not receive the requested documentation by October 30, 2013, the claim would be closed.

Two days later, on October 4, 2013, Plaintiffs filed a lawsuit against Defendant in the Suffolk Superior Court arising out of the loss.

On December 20, 2013, Defendant served Plaintiffs' counsel with a motion to dismiss the state court action based on Plaintiffs' failure to engage in a reference proceeding as contemplated by statute and under the mandatory terms of the Policy. Specifically, the Policy contained the following language required by Mass. Gen. Laws ch. 175, § 99:

> In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen; and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss ….

Three days later, on December 23, 2013, Plaintiffs' counsel sent a written demand to Defendant's counsel to refer the matter to a reference proceeding.

Pursuant to Mass. Gen. Laws ch. 175, § 100, Peerless responded to the demand by letter dated January 2, 2014, providing Plaintiffs' counsel with a list of three nominees to serve as a potential referee on the three-member reference panel.[3]

---

[3] Section 100 of Mass. Gen. Laws ch. 175 sets out the procedure for selecting the three referees. It provides that:

> If a claim is presented under any policy of fire insurance issued on property or interests in the commonwealth in the standard form set forth in the preceding section, and the parties fail to agree as to the amount of loss, the company shall, within ten days after receiving a written demand from the insured for the reference of the amount of loss to three referees as provided in such policy, submit in writing the names and addresses of three persons to the insured, who shall, within ten days after receiving such names, notify the company in writing of his choice of one of the said persons to act as one of said referees. The insured shall submit in writing the names and addresses of three persons to the company, which shall, within ten days after receiving such names, notify the insured in

On January 30, 2014, Plaintiffs filed a notice with the Suffolk Superior Court voluntarily dismissing all of their claims against Peerless in the state court action without prejudice.

Despite the requirements of Mass. Gen. Laws ch. 175, § 100, Plaintiffs' counsel did not send written notice to Peerless selecting one of the individuals off of Peerless's list to serve as a referee until January 14, 2015, over one year after Peerless sent its list. The following day, Plaintiffs' counsel sent Defendant's counsel its list of three names of individuals who could act as potential referees.

Peerless responded in writing to Plaintiffs' counsel on January 23, 2015, selecting an individual from Plaintiffs' list to act as the second referee, and the first two referees selected the third referee, as contemplated by Mass. Gen. Laws ch. 175, § 100. The parties and referees agreed to begin the reference proceeding on April 6, 2015.

Before the reference proceeding commenced, Plaintiffs filed the instant action on February 6, 2015.

On February 27, 2015, Plaintiffs' counsel provided Defendant's counsel with a document entitled "Financial Expert Report" drafted by Steven Egna, purportedly detailing a claim for economic loss on behalf of Plaintiffs from $1,170,000.00 to $1,290,000.00.

The parties completed the reference proceeding, including an inspection of the subject property and seven days of hearings. The referees published their unanimous award on July 7, 2015. The referees' award was all inclusive and was made without consideration of prior

_____

> writing of its choice of one of said persons to act as one of said referees.

Mass. Gen. Laws ch. 175, § 100. The final referee is then chosen by the two selected referees within ten days, or, absent that, by the commissioner of insurance upon application of the referees or the parties. *Id.*

payments by Peerless. The referees' award consisted of building loss and damage at actual cash value after application of the policy deductible of $26,116.77, business personal property loss and damage at actual cash value of $26,842.22, business income loss of $35,929.00, and extra expense loss of $324.25, for a total award of $89,212.24.

Following the referees' award, Peerless made payment to Plaintiffs in the amount of $42,227.28, representing the total of the referees' award ($89,212.24), less Peerless's previous payments ($32,496.08), less one-half of the third referee's bill for services ($14,488.88).

## IV. Discussion

### A. Plaintiffs' Breach of Contract Claim

Count II of the complaint alleges that Defendant breached the contract of insurance "by failing to pay for [Bearbones'] loss covered by th[e] Policy" (Dkt. No. 1 at ¶ 31). Viewing the undisputed facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, Plaintiffs fail to create a triable issue on their breach of contract claim. The undisputed facts show that the parties had a dispute as to the amount of loss and that the dispute was submitted to reference, as contemplated by Mass. Gen. Laws ch. 175, § 99 and the mandatory terms of the Policy. Thereafter, the referees issued an award, which Defendant has paid in full. Thus, the undisputed evidence establishes that Defendant fulfilled its contractual obligation to pay Plaintiffs for their covered losses.

Plaintiffs attempt to press their claim by continuing to dispute the amount owed under the Policy, arguing that their covered losses actually exceed $1 million. As observed by another session of this court in *Shealey v. Federal Insurance Co.*, 946 F. Supp. 2d 193 (D. Mass. 2012), "[a]s to reference proceedings pursuant to Mass. Gen. Laws ch. 175, § 99, courts have generally held that that panel's calculation of the amount of loss has a binding preclusive effect, but issues

of construction of policy terms 'remain open for reexamination in an action on the policy.'" *Id.* at 199 (quoting *Augenstein v. Ins. Co. of N. Am.*, 360 N.E.2d 320, 323 (Mass. 1977)).  Stated another way, "the insured can only challenge the panel's award on the basis that it misconstrued a term in the policy; he cannot simply allege that the award was unfair or challenge the factual findings of the panel." *Id.*  *See also Augenstein*, 360 N.E.2d at 323 ("Where there was no question about the 'construction' … of the policy, it would follow that the referees' finding would be conclusive of the loss as well as the amount ….").  Here, Plaintiffs are not challenging the panel's construction of a term in the Policy or whether coverage exists; they are challenging the panel's determination of the amount of loss.  This they are foreclosed from doing by Mass. Gen. Laws ch. 175, § 99 and the case law interpreting it.  "It would be improper for the Court to send these claims to the jury for reevaluation.  The purpose of the statutorily mandated reference procedure is to provide a 'summary method of establishing the amount of loss,' and allowing the relitigation of that issue before a jury would wholly eviscerate that purpose." *Shealey*, 946 F. Supp. 2d at 200 (quoting *Hanley v. Aetna Ins. Co.*, 102 N.E. 641, 643 (Mass. 1913)).  *See also Augenstein*, 360 N.E.2d at 324 (holding that where there was no question of illegality or mistake of law, "the insurer was not entitled to a fresh determination by a jury of the question of loss").  As such, Plaintiffs' breach of contract claim fails as a matter of law.[4]

---

[4] Plaintiffs' reliance on *Anthony v. Amica Mutual Insurance Co.*, No. 98-02168, 1999 WL 513958 (Mass. Super. Ct. May 13, 1999), is misplaced.  In that case, the insurer did not incorporate the statutorily mandated language in its policy, and the language that it included could be read to leave the insured the choice between reference and litigation.  In Form Endorsement CP 01 09 10 00, the policy Defendant issued to Plaintiffs tracked word-for-word the language of Mass. Gen. Laws ch. 175, § 99 (Dkt. No. 87-34 at 47).

B.  <u>Mass. Gen. Laws Chapters 93A and 176D</u>

Count III of the complaint alleges that Peerless engaged in unfair and deceptive acts and practices in violation of Chapter 93A and unfair claims settlement practices in violation of Chapter 176D.  Both sides have cross-moved for summary judgment as to this count.

To proceed against an insurer who has violated Mass. Gen. Laws ch. 176D, § 3(9), an insured must bring a claim under either Mass. Gen. Laws ch. 93A, § 9 or § 11.  *Silva v. Steadfast Ins. Co.*, 35 N.E.3d 401, 405 (Mass. App. Ct. 2015).  In this case, Plaintiffs bring their claim pursuant to ch. 93A, § 11, which "governs commercial transactions between two parties 'acting in a "business context.""'  *Kraft Power Corp. v. Merrill*, 981 N.E.2d 671, 682-83 (Mass. 2013) (quoting *Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 259 (Mass. 2008)).  "[U]nlike consumer claims under Chapter 93A, § 9, a violation of Chapter 176D constitutes only probative evidence, not per se proof, of egregious business misconduct for a Chapter 93A, § 11 business-to-business claim."  *Peabody Essex Museum, Inc. v. U.S. Fire Ins. Co.*, 802 F.3d 39, 54 (1st Cir. 2015) (citing *Polaroid Corp. v. Travelers Indem. Co.*, 610 N.E.2d 912, 917 (Mass. 1993); *Transamerica Ins. Grp. v. Turner Constr. Co.*, 601 N.E.2d 473, 477 (Mass. App. Ct. 1992)).  Thus, "section 11 plaintiffs must 'satisfy the elements of a claim based on an alleged unfair or deceptive practice under Section 2 of Chapter 93A.'"  *M. DeMatteo Const. Co. v. Century Indem. Co.*, 182 F. Supp. 2d 146, 160 (D. Mass. 2001) (quoting *RLI Ins. Co. v. Gen. Star Indem. Co.*, 997 F. Supp. 140, 151 (D. Mass. 1998)).

"To assert a claim under M.G.L. c. 93A, § 11, a plaintiff must show that the defendant 1) committed an unfair or deceptive trade practice, and 2) that it suffered a loss of money or property as a result of that unfair trade practice."  *Alan Corp. v. Int'l Surplus Lines Ins. Co.*, 823 F. Supp. 33, 43 (D.Mass.1993) (footnote omitted).  "To be actionable, the challenged conduct

must rise to the level of an 'extreme or egregious' business wrong, 'commercial extortion,' or similar level of 'rascality' that raises 'an eyebrow of someone inured to the rough and tumble of the world of commerce.'" *Peabody Essex Museum*, 802 F.3d at 54 (citing *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 49-51 (1st Cir. 2014); *Zabin v. Picciotto*, 896 N.E.2d 937, 963 (Mass. App. Ct. 2008)). In making a Chapter 93A fairness determination, the "'focus [is] on the nature of the challenged conduct and on the purpose and effect of that conduct.'" *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 40 (1st Cir. 2000) (quoting *Mass. Empl'rs Ins. Exch. v. Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (Mass. 1995)).

> In the insurance context, business misconduct that is actionable under Chapter 93A may include unfair settlement practices that are defined under Chapter 176D, § 3. Hallmarks of such misconduct generally involve the "absence of good faith and the presence of extortionate tactics." *Guity v. Commerce Ins. Co.*, 631 N.E.2d 75, 77-78 (Mass. App. Ct. 1994). Such circumstances include withholding payment from the insured and "stringing out the process" by using shifting, specious defenses with the intent to force the insured into an unfavorable settlement. *Commercial Union Ins. Co.*, 217 F.3d at 40 (providing examples under Massachusetts law)

*Peabody Essex Museum*, 802 F.3d at 54. "In contrast, '[a] plausible, reasoned legal position that may ultimately turn out to be mistaken [or unsuccessful] is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D.'" *Caira v. Zurich Am. Ins. Co.*, 76 N.E.3d 1002, 1009 (Mass. App. Ct. 2017) (alterations in original) (quoting *Guity*, 631 N.E.2d at 75, 76).

In their verified complaint, Plaintiffs do not identify the specific acts or omissions allegedly committed by Defendant that they claim violate the unfair claims settlement and unfair business practices statutes, but rather, simply restate eleven of the fourteen sub-paragraphs of ch.

176D, § 3(9).[5]  By contrast, in their motion for partial summary judgment, Plaintiffs identify three ways in which they claim that Peerless violated Chapter 93A, without identifying any of the subparagraphs of ch. 176D, § 3(9) that Peerless purportedly contravened in doing so.  In other words, they state "pure" Chapter 93A violations.  *Foisy v. Royal Maccabees Life Ins. Co.*, 241 F. Supp. 2d 65, 69 (D. Mass. 2002).  Specifically, Plaintiffs claim that Defendant's Chapter 93A violations consist of Defendant's payment before the reference proceeding of an amount less than the written referees' award, Defendant's delay of some 60 days after the loss in issue to

---

[5] Specifically, Plaintiffs allege that Defendant violated Mass. Gen. Laws ch. 176D, § 3(9) by:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) …

(j) Making claims payments to insured or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k) …

(l) …

(m) Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; or

(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

make any payment to Plaintiffs, and Defendant's inclusion of Plaintiffs' commercial lender, Lee Bank, as an additional payee on certain of the checks issued in connection with the adjustment of the loss. As to each contested act, Plaintiffs argue that the undisputed evidence establishes that Plaintiffs suffered a loss of money or property, but they develop no argument as to how each contested act was unfair or deceptive within the meaning of Chapter 93A. In its motion for summary judgment and opposition to Plaintiff's motion for summary judgment, Peerless argues that Plaintiffs fail to create a triable issue as to either element of a Chapter 93A claim.[6]

"'[W]hether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact,'" *Baker*, 771 F.3d at 49 (alteration in original) (quoting *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 54 (1st Cir.1998)) "'but whether that conduct rises to the level of a chapter 93A violation is a question of law.'" *Id.* (quoting *Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 34 (1st Cir. 2007)). *See also Commercial Union Ins. Co.*, 217 F.3d at 40 ("Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." (quoting *Schwanbeck v. Federal-Mogul Corp.*, 578 N.E.2d 789, 803-04 (Mass. App. Ct. 1991)). The court examines each contested action in turn from the perspective of each side to evaluate whether Chapter 93A has been violated, or not, as a matter of law. *Scott v. Vt. Mut. Ins. Co.*, No. 07-12081-DPW, 2011 WL 4436984, at *6 (Sept. 22, 2011).

---

[6] In Plaintiffs' opposition to Defendant's summary judgment motion, they argue that Defendant has taken the position that Chapter 93A claims must be decided in the reference proceeding required by the Policy (Dkt. No. 97 at 2-3). Defendant makes no such argument. Rather, it seeks judgment on Plaintiffs' Chapter 93A claims on the basis that it has not engaged in unfair claims settlement practices.

*1. Payment Prior to Reference of an Amount Less than the Referees' Award*

Plaintiffs first complain that Defendant violated Chapter 93A by paying an amount prior to reference that was less than the reference award. Plaintiffs cite no case law for the proposition that the mere fact that an insurer pays an insured an amount less than is ultimately awarded in reference automatically makes the insurer liable under Chapter 93A. Nor is it a tenable position. It cannot be that every time there is a dispute over the amount of loss that proceeds to a statutorily contemplated reference proceeding and results in a balance to the insured that the insurer has, *ipso facto*, engaged in an unfair trade practice.

Further, viewing the facts presented in the light most favorable to Plaintiffs or Defendant in turn, the court concludes, as a matter of law, that Peerless did not violate Chapter 93A's prohibition against unfair trade practices by their payment prior to reference of an amount less than the referees' ultimate award. Two circumstances lead to this conclusion. First and foremost, the disagreement as to the amount of loss in this case was vast by any measure. Plaintiffs sought an award at reference of between $1,170,000.00 and $1,290,000.00, while Peerless had paid only $32,496.08. The referees' award was only $89,212.24, less than ten percent of what Plaintiffs were seeking. Given this large discrepancy, there is no basis for a trier-of-fact to conclude that Peerless was acting in bad faith or engaging in extortionate behavior by disputing, and submitting to reference, the amount of loss Plaintiffs were claiming.

Second, the uncontested facts reveal that, prior to reference, Plaintiffs failed to produce information that would have enabled Peerless to calculate the amount of business income loss, a component of loss that was unpaid at the time of reference and that was the largest part of the referees' award. It is undisputed that Peerless diligently sought documentation that would allow it to calculate the amount of business income loss, making seven written requests to Plaintiffs for

specific records on April 19, April 26, May 16, May 17, August 7, August 30, and October 2, 2013. Despite Peerless's requests, Plaintiffs provided nothing until May 16, 2013, at which time they provided only a 2011 tax return. Three months later, on August 16, 2013, Plaintiffs provided a monthly summary of business for 2012. In both instances, Peerless responded promptly, advising Plaintiffs that it needed additional information to calculate the loss. That information was not forthcoming.

Plaintiffs argue that Peerless has conceded it did not need the exact documentation it requested to calculate a loss, but this does not mean that Peerless could calculate the loss without any data. Peerless's efforts to quantify the loss prior to making payment cannot be characterized as unfair or deceptive within the meaning of Chapter 93A. Indeed, Peerless was within its contractual rights in requesting the information, as Plaintiffs had a duty under the Policy (CP 00 30 04 02) to, as often as reasonably required, permit Peerless to examine the business's books and records and to cooperate with Peerless in the investigation and settlement of the claim (Dkt. No. 87-34 at 34). Thus, Plaintiffs claim that Peerless violated Chapter 93A by paying before reference an amount that was less than was ultimately awarded at reference fails as a matter of law.

### 2. *Alleged 60 Day Delay in Making Any Payment under the Policy*

Plaintiffs' second argument is that Peerless violated Chapter 93A by not paying anything until 60 days after the loss. It is undisputed that Peerless did not make any payments under the Policy until its $11,672.94 payment for building damage on April 16, 2013, which was actually 56 days after the February 19, 2013 incident that caused Plaintiffs' loss. However, Plaintiffs direct the court to no authority to support their position that a lapse of 60 days – or, more precisely, 56 days – from the date of the loss to the date of first payment runs afoul of Chapter

93A, nor has the court found any.  To the contrary, 56 days appears to be within the realm of reasonableness and, therefore, such a delay, by itself, does not amount to an extreme or egregious business wrong.  *Compare Forcucci v. U.S. Fidelity and Guar. Co.*, 817 F. Supp. 195, 197-98 (D. Mass. 1993) (granting summary judgment to the defendant insurer on the plaintiff insured's ch. 93A claims based on a finding that the lapse of two months between the time that liability was reasonably clear under the policy to when the insurer made a settlement offer was not unreasonably slow), *with R.W. Granger & Sons, Inc., v. J & S Insulation, Inc.*, 754 N.E.2d 668, 677-78 (Mass. 2001) (affirming entry of judgment against surety on Chapter 93A claim where the surety delayed almost one year in effectuating payment).  Nor have Plaintiffs pointed to any statutory provision mandating payment within a certain period of time, or included any expert evidence in the summary judgment record supporting their contention that the lapse of 56 days was unreasonable under the circumstances.  *See, e.g. Villanueva v. Commerce Ins. Co.*, 50 N.E.3d 219, *4 (May 18, 2016) (unpublished disposition) (holding that the trial court did not err in finding that expert testimony was required to establish that the insurer breached its statutory duty in settling claims where the claimed violation was not so egregious that an expert would be unnecessary).

Plaintiffs cite to the case of *Santos v. Preferred Mutual Ins. Co.*, 21 F. Supp. 3d 111 (D. Mass. 2014), for other reasons, but *Santos* is instructive on this issue of delay in payment.  In *Santos*, an oil tank in the plaintiffs' basement exploded, filling it with oil.  *Id*. at 113-14.  The defendant insurer did not make any payments under the policy of insurance for lodging, food, or other relevant expenses incurred as a result of the accident until ten months later, by which time the plaintiffs had served the defendant with a Mass. Gen. Laws ch. 93A, § 9(3) demand letter, to which the defendant failed to respond, and had filed suit.  *Id*. at 115.  Because the defendant

failed to make any payments, the plaintiffs ran out of money to stay at a hotel and had to move back into their home, which was later determined to pose an imminent threat to their health. *Id*. Under the circumstances of the case, the court denied the defendant's motion for summary judgment in their favor on the plaintiff's Chapter 93A claim, noting that the plaintiffs could proceed on the theory that the defendant "essentially … left two of its policyholders, people of very modest means, twisting in the wind while it dithered about the amount of loss." *Id*. at 118.

By contrast, here, the initial payment was made only 56 days after the incident, as opposed to ten months later, and well before the initiation of litigation. Moreover, there is no evidence in the summary judgment record showing that the 56-day delay was extreme or egregious under the circumstances, such as was before the court in *Santos*. Finally, the court here is presented with a § 11 business-to-business claim, which demands a higher standard of unfairness than a claim brought by a consumer under § 9, as in *Santos*. *Ora Catering, Inc., v. Northland Ins. Co.*, 57 F. Supp. 3d 102, 110 (D. Mass. 2014) (citing *Madan v. Royal Indem. Co.*, 532 N.E.2d 1214, 1217 n.7 (Mass. App. Ct. 1989)). There is no evidence in the record that the 56-day delay was motivated by any sort of extortionate behavior on Peerless's part as would be required to bring the action within the ambit of Ch. 93A, § 11. *See, e.g., Peabody Essex Museum*, 802 F.3d at 55 (reversing the district court's entry of summary judgment in favor of the insured under Chapter 93A where "[t]here [wa]s simply no evidence that the delay in paying unreimbursed defense costs was attributable to nefarious leveraging conduct or motives on [the insurer's] part").

As such, viewing the facts presented in the light most favorable to Plaintiffs or Defendant in turn, the court concludes as a matter of law that Defendant did not run afoul of the boundaries of Chapter 93A by issuing its first payment under the Policy 56 days after the loss.

### 3. Inclusion of Lee Bank as a Loss Payee

Plaintiffs' final argument is that Peerless violated Chapter 93A by including Lee Bank as a loss payee on certain of the checks issued in connection with the loss, a fact that is undisputed. Plaintiffs sole support for this argument is a decision by the First Circuit in *In re Montreal, Maine & Atlantic Railway, Ltd.*, 799 F.3d 1 (1st Cir. 2015). According to Plaintiffs, *In re Montreal* stands for the proposition that "a lender has no right to insurance proceeds or payment unless it is named a loss payee" (Dkt. No. 89 at 3). Plaintiffs' interpretation of the holding of *In re Montreal* is incorrect. In *In re Montreal*, the insured, a railway, suffered a catastrophic loss when one of its freight trains that included 72 tanker cars filled with oil derailed in Lac-Mégantic, Québec, sparking massive explosions and killing 47 people. *Id*. at 4. In the wake of the disaster, the insured filed a claim under a commercial property insurance policy for lost business income, and the insurer denied the claim. *Id*. Thereafter, the insured filed for bankruptcy and sued the insurer concerning the denial of the underlying claim. *Id*. The insured and the insurer settled the lawsuit, but, when the trustee moved the bankruptcy court for approval of the settlement, a creditor of the insured objected, arguing that its security agreement with the insured granted it a first-priority security interest in the proposed settlement. *Id*. The First Circuit disagreed, finding first that Article 9 of the Uniform Commercial Code did not apply to the claim, and second, that the creditor had failed to perfect its security interest under Maine common law. *Id*. at 5-11. In ruling, the court left open the question of what exactly Maine law requires for the perfection of such an interest, instead reaching the more limited holding that what the creditor had done, i.e. filing a UCC-1 financing statement with the Delaware Department of State, was insufficient. Thus, not only does *In re Montreal* not say what Plaintiffs

say it says, but also, it is distinguishable on its facts and has no applicability to the Massachusetts unfair trade practice claim that Plaintiffs are advancing.

Moreover, the court finds that Peerless's conduct here fell outside the boundaries of what may qualify for consideration as a violation of Chapter 93A. *Silva*, 35 N.E.3d at 408. The Policy provides that Peerless "will pay for covered loss or damage to real estate to each mortgageholder shown in the Declarations, or in an attached schedule, in the order of precedence, as may appear." While it is undisputed that the commercial property coverage part declarations page of the Policy lists the mortgage holder as "none," and there is no attached schedule listing Lee Bank as a mortgage holder, it is also undisputed that Lee Bank was, in fact, the mortgage holder and that Peerless was aware of that fact (Dkt. No. 99 at 4). Peerless might well have faced liability to Lee Bank had it failed to include Lee Bank as a payee on a payment for loss or damage to real estate. Under these circumstances, Peerless's actions bear none of the hallmarks of misconduct that would run afoul of Chapter 93A, including the "absence of good faith and the presence of extortionate tactics." *Guity*, 631 N.E.2d at 77-78. "[T]his record does not invoke the potent weaponry of Chapter 93A." *Peabody Essex Museum*, 802 F.3d at 56 (footnote omitted). Accordingly, Peerless is entitled to summary judgment as a matter of law.

## V. Conclusion

For the reasons stated herein, Count I of the verified complaint is DISMISSED and the court finds that judgment as a matter of law is warranted in favor of Peerless on Counts II and III. Therefore, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for partial summary judgment is DENIED. The Clerk's Office is directed to enter judgment for the defendant. The case may be closed.

It is so ordered.

Oct. 17, 2017

/s/ Katherine A. Robertson\
KATHERINE A. ROBERTSON\
United States Magistrate Judge